State of Louisiana v. The North Louisiana and Texas Railroad Company.

## No. 4414.

THE STATE OF LOUISIANA *v.* THE NORTH LOUISIANA AND TEXAS RAIL-
ROAD COMPANY.

Where it is clearly the purpose of the Legislature to give a company time within which they would have an opportunity to accept certain conditions imposed by that body, it can not be contended that official negligence in promulgating the law, should make it impossible for such time to transpire, and thus deprive the company of the right and opportunity to accept; it would enable such official negligence to defeat the legislator's will.

Where the liability for interest coupons results solely from, and is embraced in, the liability for the bonds of which they were a part when issued, a release for the bonds includes the liability for the coupons.

On the question in this case whether the act No. 97 of 1872, relied on by the; defendants, is null and void on the ground of its being in conflict with the prohibiti m in article 111 of the constitution, because it has repealed, without containing any adequate ·rovision for the same purpose, that provision of act No. 108 of 1868, obligating the defendants to deposit in the State Treasury, at prescribed dates, the money to pay certain bonds and interest coupons issued—which obligation was secured by a second mortgage on the railroad, its fixtures, and appurtenances—

Held, *First*—That the State by making the act No. 108 of 1868, the basis of its suit, recognized and affirmed its constitutionality in regard to the adequate ways and means provided for the payment of the current interest and the principal of the bonds.

*Second*—That there is nothing in the record to enable the court to determine whether or not the provision made in the law of 1872 is an adequate provision for the payment of the principal and interest of the debt created by the law of 1868, and that there may be a reasonable doubt as to whether the act of the later date actually repeals that of the earlier, in the contemplation of article 111 of the constitution.

*Third*—That the law creating the debt is certainly not repealed, and that the debt of the State so created being still in existence, the State is precluded, in this proceeding at least, from contesting its validity, or that of the means first provided for its payment; and that it is only the form and nature of the security required of the railroad company that has been changed.

*Fourth*—That it was proper to conclude that there is such reasonable doubt with regard to the unconstitutionality relied on, as, under the well settled jurisprudence of this State and country, to justify the court in not annulling the legislative enactments referred to in this case. When there is a doubt, a law will not be held unconstitutional.

*Fifth*—That this is a controversy between the State, which issued the bonds, and the railroad company for whose benefit they were issued; that the holders of the bonds and their rights are not before the court, nor any claim to enforce the payment of said bonds; that the State having paid some of the interest on them which it alleges the company were obliged to pay, and now seeking to collect back the same, the plea that the company settled with the State in accordance with act No. 97 of 1872, is a valid defense. There is nothing in the constitution inhibiting the State from accepting from its debtors such settlements as the Legislature may think judicious.

Where the demand was for the return and annulment of three hundred bonds alleged to have been issued after default, on its being proved that no such bonds were issued, a final judgment will be given, as insisted on by defendants, instead of one of nonsuit.

APPEAL from the Fourteenth District Court, parish of Ouachita, *Caldwell*, Parish Judge, presiding in place of the District Judge, recused. *Simeon Belden*, Attorney General, and *Edward Philips* for plaintiff and appellee. *John Ray*, for defendants and appellants.

·Chief Justice Ludeling, being interested, was recused.

Justices concurring: Howell, Taliaferro, Wyly and Kennard.

HOWELL, J. The State of Louisiana, through Attorney General Belden, instituted this suit in September, 1872, to recover from the North Louisiana and Texas Railroad Company the sum of one hundred and twelve thousand eight hundred dollars, with legal interest thereon

5

from specified dates, subject to certain credits, it being the amount of the interest coupons, which were taken up and paid by the State on five hundred and forty-six bonds of one thousand dollars each, issued to said company in 1869 and 1870, pursuant to act 108 of 1868, by which the company were required to deposit with the State Treasurer the money to pay the interest; also the sum of five hundred and forty-six thousand dollars, the principal of said bonds with legal interest from judicial demand, and to enforce the second mortgage created by said act upon the said railroad and all its fixtures, rolling stock and appurtenances to secure the payment of said bonds and interest; and lastly, to recover the possession of three hundred bonds alleged to have been illegally issued to the said company after they were in default in failing to deposit the money necessary to meet the interest as it fell due, as is required by the said act No. 108.

The answer contains a general denial, and a special denial that any bonds were issued when the company were in default, and sets up the act No. 97 of 1872, published on twenty-first September, 1872, and the acceptance of the terms thereof by the company as a release from all liability to the State, and a perpetual bar to any suit by the State in regard to the bonds issued under act 108 of 1868.

From a judgment in favor of the State for $87,360, amount of interest coupons paid, with eight per cent. interest thereon from certain dates, and an order for the enforcement of the second mortgage upon the railroad, etc., and a nonsuit on the claim for the return of the three hundred bonds, the company have appealed.

The act No. 108 of 1868, which is the charter of the North Louisiana and Texas Railroad Company, authorized the issuance to said company of six thousand dollars of State bonds for every mile of track when completed, to be transferable by the indorsement of the president of the company, and with the interest at eight per cent., payable semi-annually, to be secured by a second mortgage in favor of the State, upon the said railroad, fixtures and appurtenances, the company having the right to execute a first mortgage to the amount of fifteen thousand dollars per mile, which by act No. 105 of 1871 was increased to twenty-five thousand dollars per mile, and it was made incumbent on the company "on or before the maturity of any of the interest coupons on any of said bonds to deposit the amount thereof in the State treasury for the payment thereof, and in the event of the failure of said railroad company to make such deposit for the payment of the interest coupons, or any bonds so issued to them, that no further issue of bonds shall be made to said railroad company, and the State shall have the right to foreclose the mortgage herein given to secure the payment of the bonds and interest issued to said board, according to the provisions of this act." See sections 11 and 12.

The claim to enforce the payment of the bonds having been abandoned by the State, the sole question involved on this appeal is the right to collect from the company the interest for which judgment was rendered below. The defense rests solely upon the act No. 97 of 1872, entitled "An Act to authorize the North Louisiana and Texas Railroad Company to substitute stock of said company, instead of second mortgage in favor of the State, and to release the said company from other liabilities to the State." It provides that in lieu of the second mortgage required by section eleven of act No. 108 of 1868, to be given to secure the State for the ultimate payment of the bonds issued in accordance therewith, the company may give its stock to the State to an amount equal to the aggregate sum of the State bonds issued or to be issued under the charter, to wit, 11,220 shares, and on the issue and delivery of said stock by the company to the State, the former shall be relieved from all liability on the aforesaid bonds of the State, and on the said delivery being made, the remainder of the whole number of bonds authorized by the charter shall be immediately issued; and that within sixty days after the passage of the act the president and directors of the company shall, at a meeting for the purpose, adopt the provisions thereof, and within ninety days thereafter a copy of the resolution of adoption shall be delivered to the Governor, who shall file it in the office of the Secretary of State, and as soon as the certificate of said stock is tendered, the Governor shall cause the remainder of the said bonds to be delivered, which, with the bonds already issued, shall be payment in full for said stock; and the Governor shall appoint, annually, on behalf of the State, one of the nine directors to represent the State.

It is urged on behalf of the State that the conditions or terms of this act were not accepted within the prescribed time; that it does not release the company from the liability to refund what the State had paid on account of the company before the act was passed, and that it is unconstitutional because, by necessary implication, it repeals acts 108 of 1868 and 105 of 1871 so far as they stipulate a mortgage in favor of the State or hold the company liable on the bonds issued to them, without having made adequate provision in the said repealing act for the payment of the principal and interest of the bonds, as required by article 111 of the constitution.

*First*, as to the acceptance of the terms and conditions of the act. It appears to have been approved on the tenth of April, 1872, and it was to take effect from and after its passage; but it was not published until the twenty-first of September following. This is one of the many instances (if plaintiff's theory be correct) suggestive of the evils resulting from the practice, which has grown up within the last four years, of making laws during twelve months of the year instead of sixty days as fixed by one of the articles of the constitution; but, in our

opinion, the acceptance was timely made, whether we consider the law in force from April 10 or September 21 ; for within the sixty days of each date the president and directors adopted resolutions of acceptance, and those of the latter date were transmitted to the Governor.    There is and can be no question in this case as to the issuance of the remainder of the bonds within the ninety days after the said acceptance. It was clearly the purpose of the Legislature to give the company time within which they would have an opportunity to accept, and it can not be seriously contended that the negligence of the officers in promulgating the law should make it impossible for such time to transpire and thus deprive the company of the right and opportunity to accept.    It would enable them to defeat the legislative will.

Considering the acceptance as having been made within the prescribed time, as we do, there can be little doubt as to the effect of the act, if not unconstitutional, in releasing the company from all liability to the State on the bonds, which necessarily includes liability for the interest on the bonds whether then due or not.    One of the objects of the act was to release the company from liability to the State, and by express terms they were upon a certain contingency relieved from all liability on the bonds then issued or to be issued.    The liability for the interest coupons resulted solely from and was embraced in the liability for the bonds of which they were a part when issued.

The State has, by making the act No. 108 of 1868 the basis of its suit, recognized and affirmed its constitutionality in regard to the adequate ways and means provided for the payment of the current interest and the principal of the bonds.    That provision was the obligation of the railroad company to deposit in the State treasury, at the prescribed dates, the money to pay the interest and the bonds, which obligation was secured by a second mortgage on the railroad, its fixtures and appurtenances.    The State now says that the act No. 97 of 1872, relied on by the defendants, has repealed that provision of said act 108, but does not contain some adequate provision for the same purpose, and it is therefore void because in conflict with the prohibition in article 111 of the constitution.    This article reads : " Whenever the General Assembly shall contract a debt exceeding in amount the sum of one hundred thousand dollars, unless in case of war to repel invasion or suppress insurrection, it shall, in the law creating the debt, provide adequate ways and means for the payment of the current interest and of the principal when it shall become due ; and the said law shall be irrepealable until principal and interest be fully paid ; or, unless the repealing law contain some adequate provision for the payment of the principal and interest of the debt."

Conceding that the act No. 97 of 1872 repeals, in this respect, the provisions of act No. 108 of 1868, and that the question of the ade-

quacy of the provision to be made for the payment of the debt and interest is a judicial question, there is nothing in the record to enable us to determine whether or not the provision made in the law of 1872 is an adequate provision for the payment of the principal and interest of the debt created by the law of 1868. But we think there may be reasonable doubt as to whether the act of the later actually repeals that of the earlier date in the contemplation of the above article of the constitution. The law creating the debt is certainly not repealed. The debt of the State so created still exists and the State is precluded, in this proceeding at least, from contesting its validity or that of the means first provided for its payment. It is only the form and nature of the security required of the railroad company that have been changed. By our law a second mortgage was required of the company as security for the payment of the debt created in their behalf. By the other this second mortgage was relinquished upon the company's transferring to the State one-sixth of its entire stock. Upon the policy of those enactments and transactions we can give no authoritative opinion. But we can very properly conclude that there is such reasonable doubt as to their unconstitutionality, in the respects referred to, as, under the well settled jurisprudence of this State and country, to be justified in not annulling them. Where there is doubt a law will not be held unconstitutional. 3 M. 12, 553; 3 N. S. 472; 4 N. S. 138; 5 R. 383; 8 R. 416; 5 An. 96, 756; 8 An. 341; 9 An. 562; 11 An. 722.

There is another view in which this case may be considered, without direct reference to the constitutional question raised by the counsel of the State, and which is quite as favorable to the defense. This is a controversy between the State, which issued the bonds, and the railroad company for whose benefit they were issued, and the holders of the bonds and their rights are not before us. Nor is there any claim before us to enforce the payment of any of said bonds. The State has paid some of the interest on them, which it alleges the company were obligated to pay and which it is seeking to collect, as a debt due by the company. As a defense to the suit the company plead a settlement under act 97, which has authorized a giving in payment. No provision of the constitution inhibits the State from accepting from its debtors such settlements as the Legislature may think judicious.

The company insist that there should be a final judgment instead of one of nonsuit on the demand for the return and annulment of the three hundred bonds, alleged to have been issued after default. In this we concur. The testimony of the officers of the company and the statement or certificate of the Auditor in relation to this fact, are positive that no such bonds were issued.

It is therefore ordered that the judgment appealed from be reversed, and that there be judgment in favor of the defendants, rejecting plaintiff's demands.

TALIAFERRO, J., *concurring.* The only important question in my judgment that arises in this case is, as to the constitutionality of the act of the Legislature passed April 10, 1872, and numbered 97. On the part of the State it is contended that it violates article 111 of the State constitution. That article provides that "whenever the General Assembly shall contract a debt exceeding in amount the sum of one hundred thousand dollars, unless in case of war to repel invasion or suppress insurrection, it shall, in the law creating the debt, provide adequate ways and means for the payment of the current interest and of the principal when the same shall become due, and the said law shall be irrepealable until principal and interest be fully paid; or, unless the repealing law contain some adequate provision for the payment of the principal and interest of the debt."

The last sentence or clause of article 111 gives to the General Assembly a latitudinous discretion in the matter of providing ways and means for the payment of the debts it may contract exceeding in amount $100,000. The act No. 97, I conceive, virtually repeals the act 108, approved September 26, 1868, as to the kind or form of security required. In the latter act a second mortgage is retained upon the railroad, its fixtures, appurtenances, etc. The act No. 97 substitutes stock of the company in lieu of the second mortgage retained by act 108. This the Legislature had the right to do under the wide discretion it has under article 111 of the constitution. But the question here arises, has the General Assembly provided adequate means by the act No. 97 for the payment of the principal and interest of the debt contracted by the act 108 of September, 1868? This question, it is held on the part of the defendant, is for the General Assembly to determine. I think otherwise. Here the State raises the question of the constitutionality of an act of the Legislature. It is not for the party with whom the issue is made to decide it. It is to be solved by determining whether "adequate means" has been provided by the Legislature for the payment of the debt it has created. In my view of the case it becomes a judicial question. Either the force and value of the second mortgage or the value of the stock of the company will run *pari passu* with the fortunes of the company in the future depending upon the success and business of the railroad. From the lights before me I am unable to say that the stock of the company transferred to the State is not "adequate means" provided for the payment of the debt created. With the policy of substituting the stock in place of the second mortgage the courts have nothing to do.

Entertaining these views of the subject I concur in the decree rendered in the case.