WILLIAM JACK *et al.*

*v.*

F. D. WEIBENNETT, Collector.

*Filed at Ottawa November 14, 1885.*

1. TAXATION—*a tax defined, and as distinguished from an ordinary debt—paramount character of claim for taxes.* Taxes are an enforced personal contribution of persons and property, levied by authority of the State, for the support of the government and for all public needs.

2. A tax is not a debt, in the ordinary sense of that word. The State may distrain and sell property for a tax, if not paid when demanded, without first obtaining a judgment, and as between it and creditors of the person owing the tax the State is entitled to a preference. The claim of the government for the payment of taxes upon the citizen is paramount to all other claims and liens against his property.

3. The constitution requires that the General Assembly shall provide such revenue as shall be needed, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. To enforce this provision it is indispensable that the tax shall have priority in right of payment over individual debts.

4. SAME—*taxation and the insolvent laws—rights of assignee and purchasers.* Where an insolvent debtor makes an assignment of his property for the benefit of his creditors, even before the tax books are placed in the hands of the collector, the State will still have the right to subject the property assigned, for the payment of any taxes due from the assignor; and when the property assigned consists of notes and choses in action, the collector, on proper petition to the county court, will be entitled to an order of that court directing the assignee to first pay the taxes of the assignor out of the trust fund.

5. If, however, property assigned for the benefit of creditors is sold in good faith to a purchaser before the tax books come to the hands of the collector, so that no lien has as yet attached, the purchaser will take free of any lien for taxes. But tangible property in the hands of the assignee after the collector receives his warrant, is subject to distress and sale by the collector, the same as if in the hands of the assignor.

6. If the insolvent laws could be held to have the effect of releasing either persons or property from taxation, to that extent they would be unconstitutional, as section 6, article 9, of the constitution, denies the power of the legislature to release any person or property from his or its share of taxes levied for State purposes.

7. SAME—*lien for taxes—its duration.* The statute continues the power and duty of the county collector and his successor to collect taxes after his return and final settlement, until they are paid, and the lien created by the warrant continues from one collector to another, even after return of the tax books and the entry of the taxes in another book.

8. ASSIGNMENT FOR BENEFIT OF CREDITORS—*assignee takes subject to all liens and equities.* An assignee of a failing debtor takes the property assigned subject to all equities, liens or incumbrances, whether created by operation of law or by the act of the insolvent, which existed against the same in the hands of the insolvent.

9. PRACTICE—*time to object—as to sufficiency of petition for collection of taxes from an insolvent's estate.* Where an objection to the sufficiency of a petition of a county collector to the county court for an order directing the assignee of an insolvent to pay the taxes against the insolvent, is merely technical in its character, and such as might have been readily obviated by amendment, on the hearing, had it been made in the court below, if not so made it will be considered as waived, and can not be heard for the first time in this court.

APPEAL from the County Court of Peoria county; the Hon. LAWRENCE W. JAMES, Judge, presiding.

Day Bros. & Co. were merchants at Peoria, Illinois, and as such were assessed for taxes for the year 1884, in the sum of $1827. In September of that year they sold their stock of goods and other tangible personal property to Charles B. Day. On the 9th day of October thereafter, they made a general assignment of the balance of their effects, consisting of claims, demands and promissory notes due them, amounting to about the sum of $25,000, to appellants, for the benefit of their creditors. Appellants took possession thereof, and have collected enough therefrom to pay the taxes so due for the year 1884. The collector, claiming that the taxes were a charge on the fund collected, and entitled to priority of all other claims after the payment of costs and expenses of collection, presented a petition to the county court setting out the foregoing facts, and praying that the assignees be directed to make payment accordingly. That court ordered in accordance with the prayer of the petition, and this appeal is from that order.

Mr. WILLIAM JACK, and Mr. LESLIE D. PUTERBAUGH, for the appellants:

Any preference in favor of particular creditors is prohibited, and all must share alike. *Dey* v. *Dunham,* 2 Johns. Ch. 182; *Robbins* v. *Emory,* 1 S. & M. Ch. 207; *State* v. *Bank,* 6 Gill & Johns. 217; *Hoffman* v. *Mackall,* 5 Ohio, 124; *Forbes* v. *Scannell,* 13 Cal. 242; *Hall* v. *Dennison,* 17 Vt. 310; *Vernon* v. *Morton,* 8 Dana, 247.

The assignee takes subject to equities, it is true, but they must be actual equities existing at the time of the assignment. He takes subject only to liens, etc., which have attached before. Drake on Assignments, secs. 391, 403.

The tax in question was not a charge on the property at the time of the assignment. *Petition of Johnson,* 104 Ill. 50.

A tax on personal property does not become a lien on property until the warrant comes to the hands of the collector. *Hall* v. *Figley,* 23 Ill. 418; *Binkert* v. *Railway Co.* 98 id. 218; *Gaar, Scott. & Co.* v. *Hurd,* 92 Ill. 314.

A tax on personalty is a debt of no higher nature than any other one. It is a creature of the statute, dependent upon the statute for its creation, its force and effect, and its collection and lien or charge upon the property of the debtor. Even in cases in which, by laws of Congress, a general right of priority is given to the United States, it is settled that this right of priority attaches only on the residue of the fund in the assignee's hands after payment of the expenses incurred in its collection. *United States* v. *Hunter,* 5 Mason, 229.

Mr. JOHN M. NIEHAUS, State's Attorney, for the appellee:

Taxes are not debts in the ordinary sense of the word, but contributions required for the support of the government. *Shreveport* v. *Gregg,* 28 La. Ann. 836.

Taxes are charges imposed by or under the authority of the legislature upon persons and property subject to its jurisdiction. *People* v. *McColery,* 34 Cal. 432.

A tax is not a mere debt. Hilliard's Law of Taxation, p. 16, sec. 26.

That a tax does not create the relation of debtor and creditor would seem apparent. *Perry* v. *Washburn*, 20 Cal. 334.

The term "taxes," includes all contributions imposed upon individuals for the service of the State. *Green* v. *Craft*, 28 Miss. 70; *Union County* v. *Bordelain*, 7 La. Ann. 341.

Taxation is an incident of sovereignty. *Debold* v. *Ohio Trust Co.* 1 Ohio St. 563; *Mississippi Mills* v. *Cook*, 56 Miss. 59; *Duer* v. *Small*, 4 Blackford, 263; *Mechanic's Bank* v. *Debold*, 1 Ohio St. 591.

The right of the State to impose taxes upon the citizens, and the duty of the latter to pay the same, do not rest upon contract, but are limited only by the fundamental law of the State. *Pamo* v. *New Albany*, 22 Ind. 204.

State exigencies are not to be measured by those of individuals. *Sears* v. *Cottrell*, 5 Mich. 255.

A tax for the support of the government takes precedence over all other demands. 1 Blackstone's Com. 281; *Dennis* v. *Maynard*, 15 Ill. 481; *Dunlap* v. *Gallatin County*, id. 9; *Butler* v. *Bailey*, 2 Bay, 249; *Doe* v. *Deavers*, 8 Ga. 482.

The statutory mode of collecting taxes is not exclusive. *Mayor* v. *Howard*, 6 Harris & J. 383; *Dubuque* v. *Railroad Co.* 39 Iowa, 56; *Dollar Savings Bank* v. *United States*, 19 Wall. 227; Dillon on Mun. Corp. sec. 653; *People* v. *Stahl*, 101 Ill. 351; *Ryan* v. *Gallatin*, 14 id. 78; *Genera* v. *Cole*, 61 id. 397.

If a tax has been legally assessed, the owner becomes personally liable for it. *Oakland* v. *Whipple*, 39 Cal. 113.

The assignee is not a purchaser for value. He takes the property subject to all equities and charges. Burrill on Assignments, 538; *Hardin* v. *Osborne*, 94 Ill. 576; *Yeatman* v. *Savings Institution*, 95 U. S. 764.

Where a fund is in its charge, a court may order the taxes paid out of it before the fund is paid over. Cooley on Taxation, 299, note 2.

Mr. Justice Scholfield delivered the opinion of the Court:

The main controversy here is, whether creditors, in case of assignment under our insolvent laws, acquire such vested rights in the property assigned that it can not be thereafter taken or appropriated for the payment of taxes levied before that time, but which had not then become a lien on the property assigned. If a claim for taxes is but an ordinary debt, creating the relation of debtor and creditor, the question must be answered in the affirmative; for all creditors,. under the statutes relating to insolvency, must share *pro rata* under the assignment. But such a claim is not a debt, within that sense. Cooley says : "Taxes are defined as being the enforced personal contribution of persons and property, levied by the authority of the State, for the support of the government and for all public needs. They are the property of the citizen, demanded and received by the government, to be disposed of to enable it to carry into effect its mandates, and to discharge its manifold functions." And again he says : "In an exercise of the power to tax, the purpose always is, that a common burden shall be sustained by common contributions, regulated by some fixed general rule, and apportioned by the law according to some uniform ratio of equality." Cooley on Taxation, 1, 2. See, also, Blackwell on Tax Titles, 7; *Opinion of Judges,* 58 Maine, 591; *Shreveport* v. *Gregg,* 28 La. Ann. 836; *People* v. *McColvy,* 34 Cal. 432.

A creditor has no right to distrain and sell property. He must first get a judgment and an execution. But the State, because of the importance and urgency of its claim, is not required to wait for a judgment. If a tax due is not paid on demand, the collector may proceed to seize property and

sell it for its payment. (See Cooley on Taxation, 298-301.) Before property can be protected, and the rights of creditors enforced, the State must have the means of subsistence. It can not perform its functions without them, and they can only be obtained through some system of taxation. The claim for the payment of taxes upon the citizen is, therefore, of necessity paramount to all other claims against his property. Our constitution, moreover, requires that the General Assembly shall provide such revenue as shall be needful, by levying a tax, by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property. (Section 1, article 9.) To the enforcement of this provision it is obviously indispensable that the tax shall have priority in right of payment over individual debts.

In *Dunlap* v. *Gallatin County*, 15 Ill. 7, the court held that the claim of the county for taxes is entitled to priority over individual debts, and the following, from the language of the opinion, in discussing that question, is quite pertinent here : "The claim of the county" (*i. e.*, for taxes,) "does not stand on the same footing with the other indebtedness of the bank. It is entitled to priority in payment. A tax is not an ordinary debt. It is levied for the support of government, and takes precedence of all other demands against the owner. It is a charge upon the property, without reference to the matter of ownership. The property itself may be seized and sold, although there may be prior liens upon it. The estate of a deceased person is primarily liable for the taxes that may be due from it. The State is not bound to wait until the estate is administered, and then participate with the creditors in the distribution of the proceeds. It may enforce payment to the exclusion of all other creditors. And so of an insolvent estate in the hands of trustees, under a compulsory or voluntary assignment. In this case the property passed to the assignees for the benefit of the creditors of the bank. It became a common fund for the payment of their debts. But

the assignees acquired the same subject to the right of the State to charge it with taxes. The creditors likewise acquired interests therein subordinate to the right of taxation. They are only entitled to the surplus that may remain after the payment of the taxes, and the necessary expenses of administering the assignment." The same principle is referred to with approval in the subsequent case of *Dennis* v. *Maynard et al.* 15 Ill. 477.

The assignment simply placed the property in the hands of the assignees for the payment of debts, as it was in the hands of the owners for that purpose before that time. The assignees are not purchasers. They take their title subject to all equities, liens or incumbrances, whether created by operation of law or by the act of the insolvent, which existed against the property in the hands of the insolvent. (*Yeatman* v. *Savings Institution*, 95 U. S. (5 Otto,) 766 ; *Hardin* v. *Osborn*, 94 Ill. 576 ; *Dunlap* v. *Gallatin County, supra.*) Undoubtedly, if the property had been sold in good faith to a purchaser before the tax books went into the hands of the collector, then, under the authority of previous decisions of this court, the purchaser would have taken free of any lien for the taxes. But that principle has no application in this case, because no one is claiming here as purchaser. It would, moreover, seem quite clear that if this property had been of that tangible character which admits of distress, and the tax collector's books had been delivered to him for the collection of the taxes, the collector could have distrained and sold the property, entirely disregarding the claims of private creditors. It is manifest the form of the property can make no difference,—it is still personal property, and the legal rights and liabilities are precisely the same, whatever may be its form.

If the insolvent laws can be held to have the effect of releasing either persons or property from taxation, they are to that extent unconstitutional, for by section 6, article 9, of the constitution, the General Assembly is denied the power

to release any person or property from his or its proportionate share of taxes levied for State purposes. The State, then, still having the right to subject this property in the hands of the assignees to the payment of these taxes, after the tax books were placed in the hands of the collector a lien in its favor attached, and thereafter there is no pretence that anything occurred to divest the right of the State. Our present Revenue law provides that "the power and duty to collect any tax due and unpaid shall continue in and devolve upon the county collector and his successors in office, after his return and final settlement, until the tax is paid; and the warrant attached to the collector's book shall continue in force and confer authority upon the collector to whom the same was issued, and upon his successor in office, to collect any tax due and uncollected thereon, although such books may have been returned, or the tax carried forward into any other book." (2 Starr & Curtiss, p. 2076, sec. 162.) The difficulty of collecting a tax on account of the intangible character or inaccessible position of the property out of which it is to be paid, can not affect the question of the right to require such property to be devoted to such payment.

We think there was no error in the order of the county court.

Objection is urged to the sufficiency of the petition in the respect that it is not specific enough in the allegation that a sum is in the hands of the assignees, by virtue of the assignment, from which it can be seen this tax can be paid. The objection is made now for the first time. It is purely technical. There is no question in respect of the fact. No injustice is done by holding, in conformity with our ruling in chancery cases on kindred questions, that the objection comes too late. Had it been made upon the hearing, the amendment would have been allowed as a matter of course, and it would have necessitated no delay.

A final objection is to the jurisdiction of the court. We think the order is within the undoubted powers of the court in such cases. See Starr & Curtiss' Annotated Stat. chap. 72, sec. 43; *Freydendall* v. *Baldwin,* 103 Ill. 325.

The order is affirmed.

*Order affirmed.*

Mr. Justice Craig, dissenting.

Mr. Justice Sheldon does not concur.