The opinion of the court was delivered by
McEnbry, J.
The State of Louisiana instituted this suit against the defendant sheriff and tax collector of the parish of Caddo and the sureties on his official bond as tax collector, to recover the sum of $26,194.32 for taxes and licenses collected by him and not accounted for during the years 1889, 1890,1891 and 1892, together with the penalties and costs. The defendant made no defence to the suit.
The co-defendants of the sheriff, sureties on his official bond, answered pleading a general denial, and specially aver also that John Lake was elected sheriff as his own successor at the general election held on April 19, 1892, and that on said date his previous term of office expired, and that from said date respondents are not bound as sureties on his official bond; that he was commissioned sheriff June 26, 1892, and that his bond as tax collector for the term com; mencing April, 1892, was recorded July 26, 1892; that the issuing of said commission to said Lake is evidence that he had accounted for and paid over to the State all sums of money due up to that date, and that the defalcation and delinquencies of the sheriff occurred subsequent to the discharge of his sureties on the bond for the term of office commencing April 19, 1888; that said Lake, sheriff, settled with the State for all taxes and licenses for the years 1889 and 1890; that if said Lake was indebted to the State when his commission issued in 1892, that the Governor and State Auditor, by issuing said commission and giving time to said Lake without the consent of the respondent, discharged them as sureties on his official bond as tax collector.
*1210 There was judgment in favor of the State, and the respondents, sureties on the bond of Lake as tax collector, appealed.
John Lake was elected sheriff in 1888, and on the 20th day of June following filed and recorded the bond for his official conduct as tax collector. The respondents are the sureties on this bond. On the 19th day of April, 1892, he was again elected sheriff, and his commission issued on the 21st of June following. He qualified on the 15th day of July, and on the 26th of July filed and recorded his official bond. On the 10th of September, 1892, he was succeeded in office by the present incumbent.
The district judge dismissed as of non-suit the claim for taxes for 1889 and 1890, and therefore the taxes for 1891 and the licenses for 1892 are involved in this appeal.
It will hardly be necessary to comment on the position taken by respondents that the issuing of the commission to Lake by the Governor, and an extension of time, if it had been proven, by the Auditor, had the effect in the first instance of releasing him from indebtedness to the State, and in the second, of canceling his official bond and discharging the sureties. The defalcation made him ineligible to office, but if he entered upon his official duties this did not concern his sureties on his official bond, who were on said bond, vouching for his honesty and fidelity and faithful discharge of duties. An official may be ineligible to office, and yet, until his ineligibility bias been drawn in question and his successor appointed, he is both a de jure and defacto officer.
The sureties are in no way concerned about the title to the office ■or the qualification or disqualification of the officer. 40 An. 287.
The Auditor of the State has no authority to grant an extension of time to the tax collector to make his settlement. The time for these .settlements is fixed by law. The sureties on his official bond went on it with a knowledge of the law; that their principal had to account for money collected for taxes and licenses at stated times. No default •of any official excuses the neglect in another.
It has been held that the liabilities of sureties on an official bond should be held to extend to a reasonable period beyond the term of •office for his successor with due diligence to qualify. Oases cited in .State vs. Powell, 40 An. 245. But in this State the “reasonable” period has been fixed by law.
Art. 161 of the Constitution says: “All officers shall continue to *1211 •discharge the duties of their office until their successors- are inducted into office.” It is under this article competent for the Legislature to fix the period within which an officer shall qualify. Two acts of the Legislature designating this period Were in existence when this article of the Constitution was adopted, and being in accord with it, the acts were continued in force. The term of the •office is fixed at four years. This term must necessarily commence from the date of his commission and qualification under it as no-•commission can issue to him under the Act 58 of 1877, extra session, the Governor being prohibited from issuing a commission to him before the expiration of thirty days. Act 19 of 1878, Sec. 11, provides “that all State, district and parochial officers of this State, whether elected or appointed, shall be required within thirty days after the receipt of their commissions to take the oath of office prescribed by law, and give bond 'when bond is required, and cause the •same to be filed in the proper office in the manner and as required by law- The bond of Lake as tax collector was given with reference to existing law. His bond, therefore, continued in force from the •day of its execution until his successor received his commission and -qualified within the thirty days as required by Act 19 of 1878.
The bond was executed on the 20th of June, 1888. His commission •on his re-election was issued 21st June, 1892, and he took the oath ■of office 15th July, 1892, and filed and recorded his bond on the 26th •of July, 1892. Under the act the oath of office must be taken and the bond filed within thirty days.
The new bond was filed more than thirty days after the issue of •the commission, but if we make allowances for necessary delays of mailing and transit we presume it was filed within thirty days after the receipt of his commission. The-record does not show when the commission was received. For the purposes of this suit this date, if proximate.ly correct, will answer all purposes for the decision of this ease. If the sheriff fails to take the oath and give the required Ibond the office ipso facto becomes vacant, and necessarily the sureties on his bond are discharged. State vs. Powell, 40 An. 245.
The sureties on the official bond of an officer therefore continue their liability as such until the officer gives the bond within the thirty days from the receipt of his commission, or until the thirty days expire, when the office becomes vacant.
Sec. 1132, Revised Statutes, giving a sheriff elected ninety days to *1212 prove to the satisfaction of the Governor that he is not a defaulter in order to authorize the issuing of a commission to him, has no application to this case.
It is not difficult to ascertain the amount due the State for licenses and taxes by the tax collectors. Throughout the State, except the parish of Orleans, tax collectors are required to render their accounts to the Auditor within the first ten days of April, October and "January, and to make their final settlements with the auditor and police jury of each parish in the ten days after 20th of July of each year. At each settlement they are required to make an oath that the settlement contains a faithful account of all taxes collected, and the amount received, if any, from licenses to persons pursuing any trade, profession or taxed occupation. Sec. 76, Act No. 83 of 1888.
He is charged with the tax rolls and the blank licenses issued to him. Each quarterly statement must be accurate" and complete, the tax collector accounting for money received on account of the State, and the tax roll and license list is credited with the amount collected and paid over. On the final settlement he must account for the entire tax roll and license list, being credited with the blank licenses returned and the credits to which the law entitles him on the tax roll. Failing to return the blank licenses he is chargeable for those not returned as collected, and failing to obtain the proper credits authorized by law on the tax roll, he is charged with the taxes which he does not account for on the delinquent list.
He is a defaulter when he fails to make the settlement quarterly, as required by law, and he and the sureties on his official bond can be proceeded against at once and summarily.
The final settlement of the tax collector should have been made with the Auditor within ten days from the 20th of July, 1892, when a quietus would have issued to him. He did not make this final settlement and obtain a quietas.
For the taxes of 1891 the defendants have failed to show that their principal, Lake, settled according to law for the taxes of 1891, and he is therefore charged with the tax roll unaccounted for, and also for the licenses issued to him and not returned.
When the sheriff and tax collector surrendered the office or resigned it, he was compelled by law to deliver to the recorder of the parish a list of all unpaid or -delinquent taxes. Thus it will be seen that it was quite easy for the sureties to exhibit the list of *1213 unpaid taxes and the delinquent tax-payers| since the tax collector obtained his last quietus or from the date of his new bond. The burden of proof is on them to show the credits to which the tax roll is entitled.
The tax collector is therefore chargeable with the amount on the tax roll which he fails to have deducted by reason of inability to collect the tax. There is no evidence showing that any part of the balance due by him on the tax roll of 1891 was collected by him after he qualified by filing his official bond in July, 1892, at which time his sureties were discharged.
Blank licenses were issued to Lake from January to August, 1892, amounting to $15,900. He accounted for $3074, leaving $12,826 unaccounted for.
Sec. 2 of the License Act of 1890 says all licenses shall be due and collectible the first two months of each year, and all unpaid licenses shall become delinquent on the first day of March of each year. He should have returned the delinquent licenses on his first quarterly settlement. It is to be presumed that he obeyed the law and collected licenses when they were due and reported the delinquents. The record shows that in October, 1892, he returned $1073.50 blank licenses to the Auditor, and on June 21, 1892, he paid on account of licenses $2000. No collections of licenses are shown to have been made after he qualified as his own successor in office. Had this been the case it was a matter of proof, the burden of which was on the defendant sureties. That this was in the ability of the sureties to prove is shown by the provisions of Sec. 2 of the License Act of 1890. From the delinquent list of license payers it would have been easy to show the amount paid after they became delinquent, and by whom paid and at what time.
The whole case on the merits against the defendant sureties may be summed up in a few words.
The tax collector was charged with the tax roll of 1891. He defaulted on his final settlement, and was indebted to the State for the taxes not accounted for. His sureties became liable at once. Act 83 of 1888, Secs. 39, 76, 77 and 78.
The tax roll shows a balance due to the State of $10,685.81. The burden of proof is on the sureties to prove that this balance was reduced by collections on said roll, made after they were discharged.
Blank licenses were issued to him for $15,000. The licenses were *1214 due on 1st March, and after that date the license tax-payer became-delinquent, and the sheriff and tax collector should have accounted for license taxes in his settlement with the Auditor in the first quarterly settlement thereafter. Failing to do so he was a defaulter for the amount of licenses issued to him and unaccounted for, and he- and his sureties at once became liable for the balance. Revenue Act of 1888; License Acts of 1886, 1890.
After he failed in making settlements on the day fixed by law he ipso facto became a defaulter, and the burden of proof is on the-sureties to show that the balances claimed by the State on the tax roll and for licenses were collected after their release on his bond. No such showing has been made. 31 An. 736; 37 An. 718; 40 An. 237.
The case against defendants has been fully made out. The full prima facie showing made by the State by certified extracts from the-Auditor’s books, showing the condition of the sheriff’s accounts, has not been rebutted by defendants by legal vouchers for legal payments or offsets. 40 An. 234.
Judgment affirmed.