BREAUX, C. J.
This suit was brought by the state to recover the sum of $3,755.61, *287 with interest, from the succession of the late Arthur Jahraus. The charge of the state is, as relates to the ex-sheriff of Calcasieu parish, John A. Perkins, that he collected taxes for her which he failed to turn over to the auditor.
The state charges that Jahraus knew that Perkins was sheriff at the time that he received from him different sums of money in checks; that Jahraus knew that the funds against which the checks were drawn were not the property of Perkins, but of the state; and that Perkins signed the checks as drawer in his official capacity.
The defendant denied all indebtedness on his part, and specially averred that the state is estopped by reason of the fact that through her auditor she failed to require the sheriff to make his returns and settlement as the law requires.
It appears that John A. Perkins was elected sheriff in the year 1900; that it became known that he was a defaulter in the year 1904, and that he is now a fugitive from justice.
It is a fact shown by the testimony that in the early part of the year 1904, a short time before Perkins’ defalcation was discovered, the late Mr. Jahraus received from him as sheriff checks drawn against the account which he kept as sheriff and tax collector in the Bank of Calcasieu and in the First National Bank of Lake Charles.
At first the sheriff kept a personal bank account and a separate account as tax collector. In the year 1902 he ceased to keep this personal account, and only kept an account as tax collector, against which he drew indiscriminately, personally and as tax collector.
Whilst in this city checks were signed by “John A. Perkins, T. C.,” and transferred by delivery to Jahraus. They were deposited by the holder, Jahraus, in the Whitney National Bank for collection, through which | they were collected, and the amount was-placed to his credit in that bank.
The case went to trial on the issues suggested by the foregoing, and on the trial: it was shown that the sheriff was a defaulter for a large amount; that, although a. large sum was collected through his sureties and other sources, there still remains-due to the state an amount largely in excess of the amount for which the state sues-in this case.
At the outset of the discussion we readily state that we agree with the learned counsel for the defendant in the statement that the-law does not require the tax collector to-make a deposit in any particular bank. There may be a rule of the tax-collecting department requiring such a deposit which is safe to follow, but we have found no statute on the subject.
We may as well state here, although the law does not require the deposit, yet, if deposit be made, the state may trace her funds to it, if it consists of her funds, or of funds out of which she can require payment.
It is also unquestionably true, as stated by learned counsel, that the state requires the sheriff or ex officio tax collector to make due returns of his collections within the first 10 days of January, April, July, and October, and that he must make a final settlement within 10 days after the 20th of July of each year. It becomes the duty of the auditor, in case of the sheriff’s failure to thus settle, to bring the matter to the attention of the district attorney, and the judge of the district court is required to» place .the matter before the grand jury.
This was not done, although the sheriff had not settled as required.
The defendant grounds his plea of estoppel on the fact that the sheriff was always tardy, never in time at all, and in two instances made no settlement.
Under the authorities we feel constrained to hold that even if the auditor was slow *289 in requiring settlement, and the judge and the district attorney did nothing in the matter, and even if, in consequence of these facts, the defaulting officer continued in the enjoyment of public confidence, as if he had discharged all the duties incumbent upon him, yet the state is not estopped. It cannot well be held bound by the illegal acts of the officer who squandered her revenues and defaulted in his payments. It is well settled that “sureties on the bond of an officer cannot avail themselves of the laches or omissions of other officers of the state in the performance of duties imposed by law as a ground of discharge for their own liability.”
The foregoing citation is sustained substantially by a number of decisions of this court: State v. Powell, 40 La. Ann. 234, 4 South 46, 8 Am. St. Rep. 522; State v. Powell, 40 La. Ann. 241, 4 South. 447; Breaux v. Directors, 40 La. Ann. 705, 4 South. 880; Police Jury v. Tax Collector, 31 La. Ann. 738; Louisiana v. Guilbeau, 37 La. Ann. 718; State v. Lanier, 31 La. Ann. 426; State v. Lake, 45 La. Ann. 1207, 14 South. 126.
The question is whether under authority we should go further and hold that third persons (different from sureties) fall within the same rule.
It has been decided that the government is not liable for the wrongs committed by its officers, even where third persons are concerned; that it is' not bound by the neg- ■ lect of its officers; that the acquired rights of the government cannot be destroyed by the laches of its agents. Gibbons v. U. S., 8 Wall. (U. S.) 269, 19 L. Ed. 453; U. S. v. Kirkpatrick, 9 Wheat. (U. S.) 720, 6 L. Ed. 199; U. S. v. Vanzandt, 11 Wheat. (U. S.) 184, 6 L. Ed. 448; U. S. v. Nicholl, 12 Wheat. (U. S.) 1205, 6 L. Ed. 709; Jones v. U. S., 18 Wall. (U. S.) 662, 21 L. Ed. 867; Shields v. Ohio, 9 U. S. 319, 24 L. Ed. 357.
True, the state may in certain instances be estopped; but we have never found that the state was held estopped on account of the acts of an unfaithful and defaulting officer.
There are a number of decisions in matter of tax collecting and assessment, some of which have been cited by learned counsel for defendant, in which it was decided, if a person has been injured by the action of the state, the state should be held to indemnification.
These decisions are: State v. Ober, 34 La. Ann. 361; Louisiana v. R. R., 25 La. Ann. 65; Louisiana v. Taylor, 28 La. Ann. 460; Mower v. Kemp, 42 La. Ann. 1007, 8 South. 330; R. R. Co. v. Sledge, 41 La. Ann. 903, 6 South. 725; Folger v. Palmer, 35 La. Ann. 743.
In these cases there was no question of a defalcation of an officer. The error invoked against the state grew out of some statute or act of some officer who had acted within the scope of his authority.
If, for instance, in the matter of taxation, the amount should be retained by the state, it may become a matter of bad faith to retain the amount if not due. But here a different question entirely' presents itself, as we have before stated.
No decision has been cited in which it was held that the dilatoriness and subsequent defalcation of an officer was cause sufficient upon which to base an estoppel. Neither have we found in our own researches any such decision.
The moment defalcation is disclosed, policy requires that full disclosure be made which no plea of estoppel can prevent.
We leave that plea convinced that it cannot be of any avail.
We will here mention in passing that in argument at bar something was said incidently by one of the counsel about an implied and resulting trust which gave a right of recovery to the state to the amount claimed.
We easily dispose of that ground by stat *291 ing that there is no lien save that created by law.
If we were to stop here in the discussion, we would find for the defendant by reason of the fact that the state has no right springing from any sort of implied or resulting trust or lien. It is exclusively a question of ownership. If the money was not owned by the state, she is not entitled to judgment.
The question is all-important.
We feel at liberty to state that if, at any time during the discussion and before the case is finally decided, it should appear with reasonable certainty that the state is not the owner of the fund, from that moment it will be determined that the defendant is not liable.
It is the money of the state for the following reasons:
The total state taxes for the year 1903 was $96,212.13. He owed licenses in addition. His deposits show no amount equal to this Indebtedness to the state. On the contrai’y, it was always less, both in the year 1903 and in the year 1904.
We will again state, in other words, that all his collections as sheriff deposited with the banks before named, which were the banks in which he made his deposits, were ■less than the amounts owed to the state, to ■the parish, and to the school board.
We will here state incidentally that there is no question here of an amount due for ■commissions, or of any private funds deposited by him in this sheriff’s account fund. It was not shown that he ever deposited a ■.cent of his own to his credit on this account. It was exclusively his account for taxes collected.
The question suggests itself: Was the defendant sufficiently placed upon inquiry by the fact that the sheriff signed the check “John A. Perkins, T. C.”?
He was dealing with Perkins personally. He knew or should have known it. He should not have accepted a check of the sheriff upon his trust fund.
“T. 0.” evidently means “Tax Collector.” It is requisite that special heed be given to the capacity of the drawer.
The weakness of defendant’s defense in the suit is illustrated by the following: A. is agent of B. C. knows that he is agent, and that A. keeps an accoxmt to the credit of B. A. as agent hands his check to C., who accepts it and collects the amount. That is the end of the matter, if C. knows nothing of the purpose for which A. has drawn the check. He may assume that it was in connection with his agency, and that is the end of the matter. But if C. knows that A. is the agent, and that he positively had no right to draw on the fund deposited to B.’s credit, except for the one purpose of settling with A., his principal, and he accepts a check and collects the amount thereon, C. might be made to refuixd.
Here the defendant somewhat similarly accepted a check of the tax collector on funds collected by him for the state. The defendant must be held to have known that the sheriff had no right to dispose of that fund, except to make settlements with the state. It is the express law of the state, of which every one must take notice and be on his guard.
His dealings were with Perkixxs personally. As a question of law, why did he accept a cheek of “Perkins, T. O.”?
We did think for a little time that the funds deposited in the two banks, before named, by Perkins, were the indebtedness of the banks to Perkins, the depositor, as it is well known that the relation between the depositor and the bank is that of debtor and creditor; but after some reflection and after considering eminent authority we have arrived at a different conclusion.
The syllabus of the decision to which we refer reads as follows:
*293 “Although the relation between a bank and its depositor is that merely of debtor and creditor, the money which he deposits is held by him in a fiduciary capacity and does not change its character by its being placed to its credit in its bank account.” National Bank v. Insurance Co., 104 U. S. 54, 20 L. Ed. 693.
Here the money was substantially the state’s. An officer has no authority to draw out funds of his principal and use them.
The defendant knew or should have known •of the trust relations existing between the drawer of the check and the state. True, the fugitive ex-sheriff abbreviated the signature. He did not set out at length that he was drawing as tax collector, but it remained that his initials indicated that fact. It has been decided that initials sufficed. Summer v. Mitchell (Fla.) 10 South. 562, 14 L. R. A. 823, 30 Am. St. Rep. 106; Shattuck t. People, 5 Ill. 477; Russ v. Wingate, 30 Miss. 440; Rowley v. Berrean, 12 Ill. 200; Sparrow v. Hovey, 41 Mich. 708, 3 N. W. 198.
In regard to another proposition which has entered into the discussion of the case —that is, whether the defendant should have testified and explained the nature of the negotiation — we will state that whilst a party to a cause should not be held too closely to the proof of facts, or of the necessity of appearing in his own cause, yet there are •cases in which it does appear that he should testify, and the present case seems to be of that number.
He might have thrown much light upon the negotiation. This he has not chosen to •do.
Touching the necessity just mentioned, we cite the following cases: Nunez v. Bayhi, 52 La. Ann. 719, 28 South. 349; King v. Atkins, 33 La. Ann. 1064; School Board v. Trimble, 33 La. Ann. 1078; Pruyn v. Young, 51 La. Ann. 320, 25 South. 125; Bastrop State Bank v. Levy, 106 La. 586, 31 South. 164.
It was said in argument that Perkins had -collected other funds than those coming to the state; that there were other interested creditors — the parish and the school board.
Eeason and authority hold that the state is entitled to the preference over the fund, whether collected for the parish, or the school board. State v. Foster (Wyo.) 38 Pac. 926, 29 L. R. A. 243, 63 Am. St. Rep. 47; Bibbins v. Clark (Iowa) 57 N. W. 884, 29 L. R. A. 279; Robinson v. The Bank, 18 Ga. 96; Jack v. Weiennett, 115 Ill. 105, 3 N. E. 445, 56 Am. Rep. 129; State v. Mayor, etc., 10 Md. 504; Orem v. Wrightson, 51 Md. 42, 34 Am. Rep. 286; State v. Rowse, 49 Mo. 586; Smith v. State, 5 Gill (Md.) 45; United States v. State Bank, 6 Pet. (U. S.) 35, 8 L. Ed. 308.
We realize that this is a hard case,- and have felt some concern about our conclusion. We wish it were other than it is, but in our view of the law it cannot be otherwise.
The judgment is affirmed.