*882 Statement of the Case.
MONROE, J.
The state seeks to recover two sums (of §100 and §2,076.77), aggregating §2,176.77, with interest, as money received for its account by John A. Perkins, then sheriff and ex officio tax collector of Calcasieu parish in payment of taxes, and paid by him to the defendant in discharge of his personal obligation.
Defendant alleges that Perkins drew a check for §100 in the usual course of business, and received the money for it. It further alleges that on March 31, 1904, he gave defendant a check for §2,076.77 in payment of his note held by defendant and bearing good indorsement, representing at the time that the commissions due him on taxes collected exceeded that amount, and that defendant had no knowledge that the funds drawn against belonged to, or that the drawer of the check was short in his accounts with, the state, and it denies that all the funds deposited to the credit of John A. Perkins, or of John A. Perkins, tax collector, were state funds, or that any portion thereof was improperly diverted to its knowledge. It alleges that, on the contrary, as soon as it learned that said Perkins had failed to make settlement with the state as required by law, it refused to pay him about §30,000 which he had on deposit as tax collector, and notified the officers of the state that he had made demand for payment, thus enabling the state to secure said amount. It further alleges that the Governor and Auditor were negligent in not requiring said Perkins to make his settlement as provided by law; and that if, when he paid his said note, he was in defaidt, the state by the laches of its said officers enabled him to make representations to the contrary and to cause respondent to part with valuable security; wherefore it pleads that the state is now estopped to assert the claim here set up.
The two checks in question bear date, the one for §100, March 3, 1904, and the one for $2,076.77, March 31, 1904. They are both payable to the order of defendant; and whilst defendant’s then cashier testifies that defendant derived no benefit from the cheek for $100, he does not deny that it received the proceeds, and he does not say what disposition it made of them. Both checks were signed “John A. Perkins, T. C.,” and the evidence shows that they were paid from the account kept in the name of “John A. Perkins, Tax Collector.'” Mr. Perkins himself testifies, in part, as follows:
“Q. Mr. Perkins, what was your custom relative to keeping your account as tax collector; did it contain only the net amounts, less your commissions, or did it contain the amount that you had collected, including- your commissions— the gross amount of your collection? A. I deposited it all in the name of Perkins — everything that was collected.”
According to the evidence in the record, “John A. Perkins, Tax Collector,” had the following amounts deposited to the credit of his accounts in different banks on March 31, 1904, to wit:
Lake Charles National Bank......§10,933 76 First National Bank of Lake
Charles ....................... §16,519 12
Calcasieu National Bank of Lake Charles....................... §36,837 49
Total ....................... §64,290 37
He was asked whether he had any data by which he could show the balance to his credit in the Bank of Baton Rouge, and he replied that he had no such data with him. He was, however, permitted to testify over the objection- of the state, to the best of his recollection, that it was over $4,000. What may have been the amount of such balances on March 3, 1904, is not shown, save in the case of the Lake Charles National Bank, where it was §2,442.42. The record contains the following admissions:
“First. That John A. Perkins was sheriff and ex officio tax collector of the parish of Calcasieu, state of Louisiana, from June, 1900, to June 14, *884 1904, and that the board of directors and other employes of the Oalcasieu National Bank knew him so to be.
“Second. That it first became suspected by the officials of the State Auditor’s office soon after the 10th day of April, 1904, that said John A. Perkins, as tax collector, was short m his accounts, owing- to his failure to make settlement as required by law, and the Governor of the state was soon afterwards notified of the fact by the Auditor.
“Third. That said John A. Perkins was legally suspended from the office of sheriff and tax collector, under article 223 of the Constitution, by Newton, C. Blanchard, Governor of the state of Louisiana, on June 20, 1904.
“Fourth. That said John A. Perkins left the state of Louisiana on or about June 14, 1904, and did not return to the state of Louisiana until the year 1909.
“Fifth. That the annexed statement of account between the said John A. Perkins, as tax collector, and the state of Louisiana, as shown by the books of the Auditor of the state of Louisiana, shows the amount, exclusive of interest, by lum to the state of Louisiana, to be $0,(01.60, that, m addition thereto, he is still indebted to the parish of Calcasieu in his capacity as tax collector approximately $2,610, and to the parish board of [school] directors of Calcasieu parish approximately $506.50; and to rb® Fidelity Irust Company, in his capacity as “«collector approximately $5S4.50.
said ^Tnh'nTilat-n>alli -tbe above sums> due by the A". Perkins, as tax collector, to the state of Louisiana, to the parish of Calcasieu, íu boal’d of (school) directors, and
the Uidelity Trust Company represent the balances due upon various taxes and licenses collected by him for the accounts of each prior to the 14th day of June, 1904, exclusive of the interest upon said sums.”
It is shown that in certain consolidated cases pending in the district court judgment was rendered in August, 1904, against Perkins in favor of the parties named and for the amounts specified here below as for taxes collected for the accounts of said parties, to wit: State of Louisiana, $60,303.79 (subject to a credit of $2,753.25); parish of Oalcasieu, $7,759.21; parish board of “(school)” directors, $1,470.86; Fidelity Trust Company, $1,84S.25; and that by reason of amounts collected and credited thereon the balance due the state was reduced (at the time this ■suit was instituted) to the amount admitted to be due, to wit, $5,701.86.
Opinion.
[1, 2] It is admitted (that is to say, an officer of the defendant bank called as a witness in its behalf testifies to it and there is no attempt at denial) that defendant understood that cheeks drawn by “John A. Perkins, T. C.,” were drawn by Perkins in his capacity as tax collector against an account standing in that name. The defendant, therefore, knew that the checks so drawn to its order and cashed by it were drawn by Perkins in his official and representative capacity against the proceeds of taxes which he had collected in that capacity for account of the state or some other public corporation or body, and defendant must be presumed to have known that a public officer cannot use public funds for the payment of his private debts.' It is said that Perkins was entitled to certain commissions and charges which were to be paid out of the funds so collected by him, and that, though he might have retained the amounts due him on that account, before depositing his collections in bank, he did not do so, but deposited his gross collections, including his commissions and charges, and hence that a portion of the money deposited belonged to him, and he had the right to check against it for his own purposes, notwithstanding that he appeared to be checking as a state officer against public money; and defendant’s learned counsel have endeavored to show that upon March 31, 1904, when the larger of the two checks to the order of defendant was cashed, the aggregate of the balances to the credit of Perkins, collect- or, in the different banks exceeded the sum due the state and other public bodies by an amount more than sufficient to pay said check. The testimony in regard to the balance in the Bank of Baton Rouge, assuming it to have been admissible, fails to fix the exact amount of that _ balance. Assuming, however, that it was as much as $4,000, we *886 do not find the attempt of the learned counsel to have been successful. Money due for taxes is due to the state, or other public body, in' whose behalf the taxes are levied, and not to the tax collector, and, when collected, belongs to the state or other public body, and no part of it becomes, eo instanti, the property of the collector, who, receiving the whole amount in his fiduciary capacity and so depositing it in bank, continues to occupy that relation to such whole amount until the relation is terminated as to the whole or a part in some manner contemplated by law. As has been said by the Supreme Court of the United States:
“Although the relation between a bank and its depositor is that merely of debtor and creditor, * * * jf money deposited belonged to a third person and was held by the depositor in a fiduciary capacity, its character is not changed by being placed to his credit in his bank account.” Nat. Bank v. Life Ins. Co., 104 U. S. 54, 26 L. Ed. 693.
The law of this state contemplates that the tax collector shall go to the state, parish, or other officer representing the beneficiary of the tax collected by him prepared with the whole amount so collected at his command to make his settlement for such collection, and that the deductions to which he may be entitled for commissions or otherwise shall be made contradictorily with such officer. Act 170 of 1898, §§ 76, 77, 78, 79, 81, pp. 379, 380, 381. The section 79, thus referred to, for instance, provides inter alia:
[3] “That if any tax collector fails or neglects to make a settlement provided by law, he shall forfeit commissions so allowed him, and interest at the rate of 5% per month of the sum withheld; * * * and any tax collector who, having made his monthly or quarterly settlement, as provided for in this act, or. in any other acts, shall fail immediately to pay the amount so ascertained to be due into the state or parish treasury, and obtain the treasurer’s receipts therefor, shall, in addition to the forfeiture of commission and interest as aforesaid, be subject to the penalties provided for embezzlement and to removal from office.”
If, however, the tax collector can in advance of any settlement with the beneficiary of the tax or its representative lawfully appropriate and expend for his own purposes such amount of the taxes collected as he may determine is, or will be, due him as his commission, the law thus quoted, providing for the forfeiture of his commission in the event of his failing to make settlement and payment, will find no application, since he cannot forfeit that which he has already lawfully appropriated, and expended. In the case of State v. Jahraus, 117 La. 286, 41 South. 575, 116 Am. St. Rep. 208, where it appeared that the same tax collector came to New Orleans in the early part of 1904, and gave his check, signed, “John A. Perkins, T. O.,” to the defendant Jahraus, and that the check was paid from funds deposited (probably in one of the banks hereinbefore mentioned) to the credit of John A. Perkins, T. O., it was said by this court that the defendant (who was not, as in this case, the custodian of the funds drawn against) “must be held to have known that the sheriff had no right to dispose of the fund except to make settlements with the state,” and that the state was not estopped to recover the money paid to him from said fund by the alleged laches of its officers. The court also' found that the evidence failed to show that the balances in bank to the credit of the tax collector exceeded the amount of his indebtedness for taxes collected by him. We adhere to the rulings and findings so made, and, applying them to this case, are of opinion that the jury and the court a qua erred in rejecting plaintiff’s demand.
It is therefore ordered, adjudged and decreed that the verdict and judgment appealed from be annulled, avoided, and reversed, and that there now be judgment for plaintiff, and against defendant in the sum of $2,176.77, with interest from judicial demand and costs in both courts.