(92 South. 757)

No. 23547.

## GRAND LODGE, BENEVOLENT KNIGHTS OF AMERICA v. MURPHY CONST. CO. et al.

(May 22, 1922. Rehearing Denied by Division A June 29, 1922.)

*(Syllabus by the Court.)*

**1. Principal and surety ⬡⟶113 — Suretyship; debtor may impute payments as he pleases, and cannot be controlled by surety.**

In general, and except where such imputation would amount to a fraud on the part of both debtor and creditor, *the debtor* may always impute the payments as he pleases; and cannot be controlled therein by a surety.

**2. Payment ⬡⟶39(1)—Statutory provisions as to imputation applies only when debtor has not directed or consented to different imputation.**

The provisions of the Civil Code as to imputation of payments has no application except to such as must be made by *the creditor* when the debtor has not directed, or consented to, some other imputation.

**3. Payment ⬡⟶39(1)—Creditor bound to impute to debt which had fallen due.**

When several debts, owing by the same debtor to the same creditor, are not equally due, *the creditor* (unless the debtor otherwise direct) must impute the payment "to the debt which has fallen due, though less burdensome than those which are not yet payable."

*(Additional Syllabus by Editorial Staff.)*

**4. Contracts ⬡⟶141(3) — Contention that claimant was employed by contractor to divert materials cannot rest on suspicion.**

The contention that one making a claim against a building contractor's surety for the use of his teams for hauling was employed by the contractor to assist in diverting material from the building in question involves a charge of fraud, and cannot be founded on mere suspicion.

**5. Appeal and error ⬡⟶882(19)—Method of determining amount of deduction for materials not delivered held not manifestly erroneous.**

Where a furnisher of materials to a building contractor could have made certain the proper amount to be deducted for materials contracted for, but not delivered, by producing evidence of the amount of its original charges, but failed or refused to do so, it was not manifestly erroneous to base the deduction on the average price of all similar material furnished.

**6. Sales ⬡⟶360(2)—When lumber of uniform thickness not furnished deduction for scraping and smoothing held equitable.**

Where a furnisher of materials to a building contractor failed to furnish flooring of uniform thickness, and the architect refused to accept it, unless scraped and smoothed to make an even surface, it was equitable to charge the furnisher with the extra cost of scraping and smoothing certain floors, but not the cost of scraping and smoothing a floor which would have required scraping and smoothing in any event, in the absence of evidence that the lack of uniform thickness added to the cost, or that the furnisher agreed to bear the cost.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Action by the Grand Lodge, Benevolent Knights of America, against the Murphy Construction Company and others. From a judgment for certain of the defendants, the defendant, United States Fidelity & Guaranty Company, appeals. Amended and affirmed.

J. Zach Spearing, of New Orleans, for appellant United States Fidelity & Guaranty Co.

Andrew B. Booth, Jr., of New Orleans, for appellee J. C. Maurer.

Andrew M. Buchmann, of New Orleans, for appellee Estate of R. G. Holzer.

James J. McLoughlin, of New Orleans (Oscar Schreiber, of New Orleans, and Frank McLoughlin, of counsel), for appellees Geier Bros. Lumber Co., Inc., and Estate of Maurice Kenny.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

ST. PAUL, J. This is a concursus proceeding growing out of a building contract. The owner (plaintiff) has called in the contractor, the surety on the latter's bond, and certain furnishers of material. The controversy in this court is entirely between

these last and the surety, and only four claims are involved. The matter was tried before a commissioner, whom we recognize as being then a practicing member of the bar, now deceased. He allowed: (1) Kenny, for hauling, $69.50; (2) Geier Bros., for lumber, $822.98; (3) Holzer, for metal work, $572.50; (4) Maurer, for painting, $1,120.25. The trial judge disallowed the Kenny claim, but otherwise approved the finding of the commissioner. The surety appealed; Kenny answered, praying that his claim be reinstated; Geier Bros. answered, praying for an increase.

## I.

[4] The commissioner, who was fully qualified to discharge his duties, was better situated than the district judge to resolve the simple question of fact whether Kenny had or had not made out his claim; for he had seen and heard the witnesses, and the district judge had not. We think the evidence justifies his finding that hauling was done to the amount claimed. The suggestion that Kenny's teams were employed to assist the contractor in diverting material from this building to other quarters is one which does not appeal to us. It involved a charge of fraud, not only against the contractor, but against Kenny, and cannot be founded on mere suspicions. There are many things which must be removed from a building site, as well as brought to it, including surplus materials; and the mere fact that materials are removed from one building to another is no ground for a drayman employed for that purpose to suspect that his employer is without right to make the transfer. This claim should be re-instated.

## II.

[5] Geier Bros. complain that the commissioner deducted too much for materials contracted for, but not delivered. They could have made certain the proper amount to be deducted by producing evidence of the amount of their original charges; which they agreed to do, but afterwards failed, neglected, or refused to do. The commissioner made as fair an estimate of the value as he could, by averaging the price of all similar material furnished, which was the best he could do. We see no manifest error in this method, under the circumstances.

[6] They also complain that they were charged with the cost of scraping and smoothing certain floors; whilst the surety, on the other hand, claims that they should be charged also with the cost of scraping and smoothing still another floor, to wit, the ballroom floor. The facts are that they furnished certain flooring, not of uniform thickness (as it should have been), and the architect refused to accept it unless scraped and smoothed to make an even surface. This was agreed to; and of course Geier Bros. are liable for the extra cost entailed. The commissioner allowed this extra cost as to all floors but the ballroom floor, which, according to the specifications, was to have been scraped, smoothed, and sandpapered in any event. There is no proof in the record that Geier Bros. agreed to bear the cost of scraping and smoothing this ballroom floor, as a consideration for having the flooring accepted; and there is no evidence how much more, if any, this lack of uniform thickness added to the cost of the scraping and smoothing which had to be done in any event. The commissioner's conclusion to charge Geier Bros. with the cost of scraping and smoothing all floors but the ballroom floor, but not to charge them with the cost of scraping and smoothing *that* floor, was the fairest and most equitable thing to do under the circumstances. We therefore approve his action on this claim.

## III.

The claim of Holzer and that of Maurer may be considered together. The amount claimed by each is admitted to be correct;

and the only question is whether or not certain payments which they received from the contractor during the course of their work were properly imputed to other claims which they had against him, or should have been imputed to their claims in this case.

This court has not had occasion to pass upon imputation of payment in connection with the claims of furnishers of materials under building contracts. But the Court of Appeal for the Parish of Orleans has had occasion to do so several times.

In Roca v. Caruso, 7 Orleans App. 451, that court said:

A furnisher of building materials, who knowingly receives from a contractor money earned under one contract, cannot impute such payment to any other account, even though older, as long as the debt incurred in connection with such contract remains unpaid.

But in Jordy Bros. v. Judlin, 9 Orleans App. 43, it was stated that—

The ruling in Roca v. Caruso, 7 Court of Appeal, 451, is not to be extended beyond those cases where the furnisher of materials knows the origin of the funds paid to him by the contractor and has received no instructions to impute the payment to any particular account.

In the Jordy Case it was stated that in the Roca Case the contractor had sent (to the furnisher of materials), not money or even his own check, but the check of a party for whom work had been done, and without instructions as to how to impute the payment, and that the presumption was that the contractor intended the payment to be applied to the contract out of which the money came. But in the Jordy Case the contractor had paid with his own personal check, and had sent instructions as to how the payment should be imputed. And the court held that he had a right to do so.

This was in strict accord with provisions of the Civil Code:

*Art. 2163:* The debtor of several debts has the right to declare, when he makes a payment, what debt he means to discharge.

[1] In general, therefore, *the debtor* may impute his payments as he *pleases*, and cannot be controlled therein by a surety (Robson & Allen v. McKoin, 18 La. Ann. 544), although that rule may be subject to some exception, as where the payment, *to the knowledge of the creditor*, is derived from a source such that it would be a *fraud* for the creditor to consent with the debtor that the money be diverted and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties. See, for instance, Merchant's Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624; First Nat. Bank of Elizabeth City v. Scott, 123 N. C. 538, 31 S. E. 819, and Burbank v. Buhler, 108 La. 39, 32 South. 201. See, also, Panama Sash & Door Co. v. U. S. Fid. & Guar. Co., 12 Orleans App. 15, 20; Lamson v. Beard, 94 Fed. 30, 42, 36 C. C. A. 56, 45 L. R. A. 822; Merchants' Loan & Trust Co. v. Lamson, 90 Ill. App. 18; First Nat. Bank v. Gilbert & Clay, 123 La. 845, 49 South. 593, 25 L. R. A. (N. S.) 631, 131 Am. St. Rep. 382; State v. Jahraus, 117 La. 286, 41 South. 575, 116 Am. St. Rep. 208; also Conservative Homestead v. Pollock, No. 7430, Orleans Court of Appeals, and 30 Cyc. 1251.

Hence except where such imputation of payment would amount to a *fraud* on the part of both debtor and creditor, *the debtor* may always impute the payment as he pleases.

[2, 3] Hence, also, article 2166, C. C., has no application except to the imputation *which must be made by the creditor when the debtor has not directed, or consented to, some other imputation;* and again it has no application except where the several debts are *equally due;* i. e., have matured and become exigible.

Thus the Court of Appeal, referring to the obligation of *the creditor* to impute a payment to a secured in preference to an unsecured debt, where both were equally due, has said (In re Mrs. Julia Campagno, praying for a concursus, No. 7443 of its docket):

A creditor of several claims against the same debtor, all matured, receiving payment from his debtor, must, in the absence of the consent of the debtor, impute the payment so made to the debt secured by privilege, or by a surety, in preference to one not so secured; both the debtor and his surety may enforce this imputation.

And again:

In the case before us no imputation had been made by the debtor; and it does not appear that he consented to the imputation made by the creditor or that the creditor had informed him of the imputation he had made, or that he was aware of it. Therefore the debtor and his surety have a right to demand the imputation provided by law.

### IV.

In the case before us we have none of the circumstances which controlled the courts in the various cases above cited.

First of all, the contractor paid with his own check, drawn against his own bank account. Presumable he had *something* of his own, and was to make some profit even out of this very contract, which would all be his own, and with which he had not only the legal but even the moral right to do as he pleased; and, if there was either right or obligation on the part of any one to look into the state of the contractor's private affairs, it behooved his surety, as an interested party, to do so, rather than a creditor seeking simply to collect a past-due debt.

Again, Holzer's contract was for a lump sum, and the time for payment was not specified. The law therefore fixed the time for payment as being at the time of delivery, i. e., completion. C. C. 2550. Dreyfus v. New Iberia, our No. 24473, 150 La. 1020, 91 South. 439. And the work on this contract was not completed until long after the payment in controversy was made; so that at the time these payments were made and imputed to an old and overdue account, the two debts were not *equally due*, and hence the imputation was properly imputed "to the debt which had fallen due,

though less burdensome than that which was not yet payable." C. C. 2166.

As to Maurer's claim, that was to be paid for as the work progressed; but the testimony shows that he had done very little work on the building when the payments were made to him, not enough to entitle him to demand a payment. Moreover, the evidence shows that Maurer was pressing the contractor for the past-due claim, and clearly the claim which the contractor meant to pay was that which his creditor was demanding and could have insisted on; not the claim which was not yet due, which the creditor was not demanding and could not have insisted upon. Manifestly then the contractor meant that the payment should be imputed to the claim which the creditor was demanding.

Finally, the contract between the owner and contractor provided that the latter should be paid monthly, upon certificates of the architect for 85 per cent. of "the value of materials in place and work executed on building up to the end of each month," and the architect issued certificates accordingly. But the evidence shows that at the time of the payments in controversy, Holzer's work was not *in place*, but at his own shop, and that Maurer had done very little work, if any, on the building. So that the architect's certificates did not at that time include the work and materials of these two subcontractors; and thus, whatever may have been the shortcomings of the contractor in other respects, it cannot be said that he was diverting to the payment of the old accounts due these claimants money paid to him by the owner on account of work done by them on this building.

On the whole, we see no reason for saying that the imputations made by these claimants were not properly made.

### Decree.

The judgment appealed from is therefore amended by striking therefrom so much as

rejects the claim of the estate of Maurice Kenny, and by inserting in lieu thereof that there be judgment in favor of the Succession of Maurice Kenny, and against the United States Fidelity & Guaranty Company, for the sum of $69.50, with legál interest from April 23, 1917, until paid and costs. And as thus amended the judgment appealed from is affirmed.

DAWKINS, J., concurs in the decree.

Rehearing refused by Division A, composed of Chief Justice PROVOSTY and Justices OVERTON and LECHE.