No. 2429
Second Circuit

---

LONNIE G. EVERETT v. S. S. GRAYE, ET AL.

---

(December 1, 1925, Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Imputation—Par. 2, 7.**

Under the provisions of Article 2166 of the Civil Code when the receipt bears no imputation the payment must be imputed to that debt which the debtor at the time had most interest in discharging.

2. **Louisiana Digest—Imputation—Par. 2, 8.**

Except where the imputation of payment to the debt which the debtor had most interest in discharging would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payment as he pleases.

3. **Louisiana Digest—Imputation—Par. 3, 6.**

A creditor of several claims against the same debtor, all matured, on receiving payment from his debtor, must, in the absence of the directions from the debtor, impute the payment so made to the debt secured by privilege, or by surety, in preference to one not so secured.

4. **Louisiana Digest—Appeal—Par. 625.**

The finding of the trial judge that there was an agreement between the creditor and the debtor to apply the price of the cross ties to the payment of the note in question being eminently correct is affirmed.

Appeal from Third Judicial District Court of Louisiana, Parish of Union, Hon. S. D. Pearce, Judge.

This is a suit to collect a promissory note with interest and attorney's fees. There was judgment rejecting plaintiff's demands as to two of the defendants and non-suit as to the third defendant. Plaintiff appealed.

Judgment affirmed.

J. W. Elder, of Farmerville, Edward Everett, Jr., of Farmerville, attorneys for plaintiff, appellant.

H. G. Fields, of Farmerville, attorney for defendants, appellees.

CARVER, J.    This is a suit by L. G. Everett against E. S. Gray, R. D. Cox and T. R. Crow brought on October 20, 1924, on a promissory note dated January 5, 1920, due sixty days after date, for $107.00 besides interest and attorney's fees.

The defense is payment.

From a judgment finally rejecting plaintiff's demands as to Cox and Crow and

rejecting them as in case of non-suit as to Gray plaintiff appeals.

The district judge, in an exhaustive analysis of the testimony, found that plaintiff, who was a dealer in railroad ties, loaned Gray the money for which the note was given under an express agreement with him and the other two defendants that out of tie timber to be purchased from defendant Crow, Gray should make ties and deliver them to plaintiff to pay the note; that some eight hundred ties were so made and delivered; that after paying stumpage and hauling out of the price of these ties, enough was left to pay this note but that instead of so applying it plaintiff applied it to another debt he claimed against Gray.

We have carefully read the testimony in the case and do not find that the district judge manifestly erred in arriving at these conclusions of fact.

Plaintiff claims that according to the prevailing custom he made advances to make these ties; that he had the right to apply the proceeds of the ties to such advances as well as to the stumpage and hauling; and that the price of the ties was not sufficient to cover all these items.

After finding the facts mentioned above, the opinion of the district judge proceeds:

"Plaintiff knew that Crow and Cox were both expecting him to apply the proceeds of the ties to the payment of the note secured by them, and it was not necessary for him to sell Gray a dollar's worth of supplies to enable him (plaintiff) to get his money on the note. It may be custom to do that, but custom and law are not always the same thing, and this is one of the cases in which they are not the same. Hence, when plaintiff allowed Gray to get his debt for supplies of provisions, money or anything else and expected to get his pay out of the cross-tie money on the theory that according to custom he had the right to do so he, that moment, conceived a fraudulent intent that later on ripened into an act of fraud, as against Crow and Cox. If there was really and truly a supply debt due plaintiff growing out of the said tie transaction in addition to Gray's said note, and even if Gray was due plaintiff still another debt, which is very probable, when he got ready to make a payment it was his legal right to say which one of the debts he desired the payment imputed to. The law does not give that right to the creditor except in exceptional cases, of which this is not one. Civil Code, Art. 2163, provides that:

"'The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge.'

"But even the principal debtor, Gray, could not have imputed this payment to any other debt he might have owed plaintiff than the note in contest without himself being guilty of fraud, because he knew that this tie money was intended from the beginning to go to pay the secured note. It is not claimed by plaintiff that Gray authorized him to apply this money to any particular debt, or that he was even asked by plaintiff to do so. It would seem that nothing was said about it by either plaintiff or Gray, and that imputation was made by plaintiff of his own accord and without mentioning it to Gray. In this event the law imputes the payment to the debt that the debtor had at the time most interest in discharging, under the provisions of Article 2166 of the Civil Code, which, in this case, was the security debt. In addition to this Gray's testimony shows conclusively that he desired the tie money to be applied to the note secured by Crow and Cox, and had no other thought about the matter. This question of imputation of payments under similar circumstances to those in this case was passed upon by the Supreme Court of this state in the case of Grand Lodge, etc., vs. Murphy Construction Co., 152 La. 123, 92 South. 757, in which the Supreme Court passed upon some phases of the subject directly applicable to this case, extracts from which we reproduce here:

"'In general, therefore, the debtor may impute his payments as he pleases, and cannot be controlled therein by a surety (Robson & Allen vs. McKoin, 18 La. Ann. 544), although that rule may be subject to some exception, as where the payment, to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with the debtor that the money be diverted

and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties.' To sustain which statement the court here cites a long list of authorities.

"The court then proceeds as follows:

" 'Hence except where such imputation of payment would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payment as he pleases.'

" 'Hence, also, Article 2166, C. C., has no application except to the imputation which must be made by the creditor when the debtor has not directed, or consented to some other imputation; and again it has no application except where the several debts are equally due; i. e., have matured and become exigible.'

"The court then approvingly quotes from a decision of the New Orleans Court of Appeal as follows:

" 'A creditor of several claims against the same debtor, all matured, receiving payment from his debtor, must, in the absence of the consent of the debtor, impute the payment so made to the debt secured by privilege, or by a surety, in preference to one not so secured; both the debtor and his surety may enforce this imputation.'

"And, again:

" 'In the case before us no imputation has been made by the debtor; and it does not appear that he consented to the imputation made by the creditor or that the creditor had informed him of the imputation he had made, or that he was aware of it. Therefore the debtor and his surety have the right to demand the imputation provided by law.'

"This reasoning seems to fit the case at bar perfectly, and leaves but little else to be said in support of the conclusion the court has reached on this question.

"Counsel for plaintiff contends that the demand of defendants is one in compensation, and invokes the rule of law that compensation cannot be pleaded in an open account against a note—an unliquidated against a liquidated claim. That is good law, but it does not apply in this case. Defendants neither allege nor attempt to prove compensation; but they do distinctly allege and prove payment. There is a distinct difference in the two pleas. Both pleas are an admission of the debt sued upon, but one says that

while the debt once existed it now no longer exists for the reason that it has been paid and extinguished, while the other is simply a declaration by the party being sued that the party suing him is also indebted to the party sued, and interposes the debt as an off-set against the debt sued upon. Payment signifies acceptance, on the part of the creditor, of money or property in satisfaction of the debt, which has extinguished the debt; while compensation is the suggestion of the co-existence of counter-claims which should extinguish each other. The court is clearly of the conclusion that the law of compensation should not apply in this case."

The above quotation from the judge's opinion we think correctly states the law applicable to the case.

In this court plaintiff's counsel argues:

I.

"That there was no agreement to that effect (meaning that the price of the ties should be applied to the note) and that therefore in the absence of such an agreement the general rule of law should apply that when a person owes the same person several obligations some of which are secured and the others unsecured that the payment should be applied to the unsecured obligations."

He cites no authority on this proposition of law, which seems to us is the contrary of the rule, as given by the Orleans Court of Appeal in the quotation containing the Grand Lodge case, supra. Besides, the judge of the lower court found that there was an agreement to apply the price of the ties to the payment of the note.

II.

That the judge erred in not permitting the application of the price of the ties to pay the advances made to Gray for the purpose of making them, which advances, together with stumpage and hauling, consumed the entire price.

The plaintiff's account on January 7, 1920, two days after the note was given,

after crediting ties evidently furnished before that time, shows a balance due by Gray of $58.72. The account at the end of all transactions shows a balance of only 89 cents against Gray.

It is evident from this, therefore, that $57.83 of the tie money at least was not consumed in necessary supplies to make the ties but was applied to a debt originating before the making of the contract involved in this case.

It is clear, therefore, that this $57.83 at least should have been applied on the note. If it had been so applied, it would have left only $49.17 due on the note, if all the items on plaintiff's account since January 7, 1920, consisted solely of stumpage, hauling and necessary supplies to make the ties in question.

We do not think the proof sufficient to show this. Hence, even if according to law or according to custom plaintiff had the right to apply the tie money not only to stumpage and hauling but also to necessary supplies, we do not think he has shown that enough of the items were necessary supplies to consume this balance of $49.17.

Defendant, Gray, does not appeal or move to amend, so the judgment as to him, one of non-suit, cannot be changed.

It is therefore decreed that the judgment appealed from be affirmed.