MADISON LUMBER CO. v. BACHEMIN ET AL.

(November 13, 1928. Opinion and Decree.)

J. D. & M. L. Dresner, of New Orleans, attorneys for plaintiff, appellee.

Milner & Porteous, and L. R. Hoover, of New Orleans, attorneys for defendant, appellant.

JANVIER, J. ad hoc. Paul J. Bachemin, one of the defendants, was a contractor operating in and near this City. Fidelity & Deposit Company of Maryland, the other defendant, as surety, executed a statutory building bond on which Bachemin was principal, in connection with a building contract for the erection of certain structures for one Sam Fertel.

Bachemin, for sometime prior to the execution of the contract referred to, had been rather heavily indebted to the plaintiff.

He purchased certain materials and supplies from the plaintiff to the extent of $1,419.96, to be used in the construction of the Fertel Buildings.

The Fertel building contract was dated May 8, 1923. Shortly, thereafter, to-wit, on May 20, 1923, Bachemin commenced making payments to plaintiff, and from time to time made other payments, five in all, as follows:

| | |
|---|---|
| May 20, 1923 | $850 |
| June 28, 1923 | 800 |
| August 27, 1923 | 500 |
| October 9, 1923 | 500 |
| December 31, 1923 | 500 |
| | $3150 |

The plaintiff received no verbal instructions from Bachemin as to the imputation of these payments, and, having no knowledge as to the source from which the funds were derived, imputed the payments, as was its right and duty, to the oldest accounts, and, as the oldest accounts absorbed practically all of the payments, there was little or nothing left to be paid on the purchases made for the Fertel job.

Defendants, particularly Fidelity & Deposit Company contend that plaintiff knew or ought to have known that the money used in making the above referred to payments, had come from Fertel, and that, therefore, plaintiff had no right to impute the payments to the oldest accounts; at least, until a sufficient amount had been imputed to the Fertel account to balance it. The payments were made to plaintiff by checks of Bachemin. He did not obtain checks from Fertel and endorse them over to plaintiff, but gave his own personal checks, on which there was no indication that the money had come from Fertel.

We readily concede that, if plaintiff had knowledge, or if from the circumstances surrounding the transaction, plaintiff could be charged with knowledge as to the source of the funds in question, then it had no right to make the imputations that it did make, and that to do so, would have amounted to a fraud on the surety.

We have, however, searched the record diligently for evidence showing such knowledge and have failed to find it. Defendant argues, that as Bachemin had made no payments on the old accounts for a long time, and that, as Bachemin was always behind in his payments, and apparently always made his payments on one job from money received from the next, and that as plaintiff was furnishing the materials for the Fertel job, it should have realized that Bachemin could have obtained funds from no other source and, that, therefore, the payments were being made with the funds paid Bachemin by Fertel.

The most we can say, is that, the fact that the payments were recommenced after the beginning of the new job, was a peculiar coincidence which may have created a suspicion of knowledge as to the source of the payments, but which, in our judgment, is not quite sufficient to shift the burden and to require the plaintiff to prove that it had no actual knowledge.

The funds may have been obtained from other sources; Bachemin may have inherited the money. It is presumed, that there was a profit for him in the Fertel contract and certainly he could have disposed of that profit as he wished.

We do not believe that there is a duty in a furnisher of supplies to inquire into the source from which payments made to him may have come. As between the furnisher of supplies and the Surety, we think that there is a greater duty in the Surety to obtain this information and to know the source of income of the contractor, and to see to it that proper imputations of payments are made.

We realize that surety companies, in situations such as existed here, are, of course, at a great disadvantage and unquestionably often suffer as a result of the imputation of payments to old accounts, in which they are not interested, instead of to fresh accounts in which they are vitally interested, but we see no remedy for this situation unless there is

knowledge in the furnisher of supplies of the source of the payments or unless under the circumstances he should be charged with such knowledge.

As this court said in Roca vs. Caruso, 7 Orl. App. 451:

"A furnisher of building materials, who knowingly receives from a contractor money earned under one contract, cannot impute such payment to any other account, even though older, as long as the debt incurred in connection with such contracts remains unpaid."

It will be seen that knowledge in the furnisher of supplies is essential and where there is no knowledge the payment must be imputed to the oldest accounts.

This court also said in Jordy Bros. vs. Judlin, 9 Orleans App. 43:

"The ruling in Roca vs. Caruso, 7 Court of Appeal 451, is not to be extended beyond those cases where the furnisher of materials knows the origin of the funds paid to him by the contractor and has received no instructions to impute the payment to any particular account."

In Grand Lodge Benevolent Knights of America vs. Murphy Construction Company, 152 La. 123, 92 So. 757, the Court, in discussing points identical with those raised in the argument of this case, said:

"First of all, the contractor paid with his own check, drawn against his own bank account. Presumably he had something of his own, and was to make some profit even out of this very contract, which would all be his own, and with which he had not only the legal but even the moral right to do as he pleased; and, if there was either right or obligation on the part of any one to look into the statement of the contractor's private affairs, it behooved his surety, as an interested party, to do so, rather than a creditor seeking simply to collect a past-due debt."

We see no escape from the conclusion, that the evidence fails to show that the plaintiff had knowledge that the funds were derived from the Fertel job, and that, it also fails to show circumstances, which would justify us in holding that the plaintiff should have had such knowledge.

For these reasons the judgment appealed from is affirmed.