HORTMAN-SALMEN CO., INC., v. NAQUIN ET AL.

———

(February 17, 1930. Opinion and Decree.)

———

See, also, 11 La. App. 619, 124 So. 546.

Edrington & Carmouche and Emile A. Carmouche, of New Orleans, attorneys for plaintiff, appellee.

John B. Fisher, of New Orleans, attorney for defendants, appellants.

JANVIER, J.    Defendant Naquin, a contractor, undertook the repair and reconstruction of certain premises, in this city, belonging to Felix Famularo.

No written contract was entered into, and no bond was required of the contractor.

Lumber and building material to the extent of $1,148.87 was purchased by Naquin from the Hortman-Salmen Co., Inc., and was used in the said repair and reconstruction work.

When the work was nearly completed, Famularo, apparently becoming fearful that the purchases made from the Hortman-Salmen Company might not be paid for by Naquin, upon the occasion of the making of a payment of $1,000 to Naquin, accompanied the said contractor to the office of the Hortman Company to make certain that $700 of the amount he had just paid to Naquin would be applied on the account due by Naquin to the Hortman Company for the purchases made for Famularo's work.    On this visit Famularo and Naquin were accompanied by Alfred Bonneval, nephew of Famularo.

It is not disputed that the $700 in question was paid by Naquin to the Hortman Company, but, as Naquin was indebted to that company for other purchases previously made for other jobs, the payment was not applied as a credit against the material bought for the Famularo work, but, instead, was imputed by the Hortman Company to the older accounts due by Naquin.

The question presented is whether the payment was properly imputed to the older accounts.    The district court held that the payment had been correctly imputed and gave Famularo no credit therefor, and from that judgment Famularo has appealed.

The evidence shows that the total amount of the bill as originally rendered, to-wit, $1,148.87, was correct, and there is no contention that Famularo, as owner, is not liable for any unpaid balance thereof, (Act 298 of 1926) but it is argued that the $700 payment should have been credited on this account and that the balance, to-wit, $443.87, represents the full extent of Famularo's liability.

Where the rights of third parties are not involved payments made by a debtor to his creditor may be imputed by agreement, and, in the absence of agreement, the imputation shall be made in accordance with the provisions of article 2166 of the Civil Code.

But, where the imputation in accordance with the article in question would prejudice the rights of third persons, this arti-

cle has no application. In Griffin vs. His Creditors, 6 Rob. 216, the Supreme Court said:

"We are referred to the rules laid down in the Code for the imputation of payments, when two debts are of the same nature, and equally onerous. * * * These rules, which are to govern in the settlement of accounts between a debtor and his creditor, cannot clearly be enforced to the prejudice of third persons."

This doctrine was approved in Burbank vs. Buhler, 108 La. 39, 32 So. 201, 205, in which we find the following:

"Persons are much more free to act in their dealings with each other when their own interests alone are to be affected than they are when the interests of persons other than themselves will be made to suffer."

Since, then, the codal provision to which we have referred cannot be taken advantage of to the prejudice of the rights of third persons, it becomes necessary to determine just what are the rights of a third person in a situation such as existed here.

In Roca vs. Caruso, 7 Orl. App. 451, this court said:

"A furnisher of building materials, who knowingly receives from a contractor money earned under one contract, cannot impute such payment to any other account, even though older, as long as the debt incurred in connection with such contract remains unpaid."

In Jordy Bros. vs. Judlin, 9 Orl. App. 43, fearful that the doctrine of the Roca case might, by reason of certain dicta which appeared therein, be extended beyond the limits intended, this court said:

"The ruling in Roca v. Caruso, 7 (Orl.) Court of Appeal, 451, is not to be extended beyond those cases where the furnisher of materials knows the origin of the funds paid to him by the contractor and has received no instructions to impute the payment to any particular account."

In Grand Lodge Ben. Knights of America vs. Murphy Construction Co., 152 La. 123, 92 So. 757, 758, the Supreme Court approved the doctrine of the cases to which we have referred and said:

"In general, therefore, the debtor may impute his payments as he pleases, and cannot be controlled therein by a surety (Robson & Allen v. McKoin, 18 La. Ann. 544), although that rule may be subject to some exception, as where the payment,. to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with. the debtor that the money be diverted and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties. See, for instance, Merchants' Ins. Co. v. Herber, 68 Minn. 420, 71 N. W. 624; First Nat. Bank of Elizabeth City v. Scott, 123 N. C. 538, 31 S. E. 819, and Burbank v. Buhler, 108 La. 39, 32 So. 201. See, also, Panama Sash & Door Co. v. U. S. Fid. & Guar. Co., 12 Orl. App. 15, 20; Lamson v. Beard, 94 F. 30, 42, 36 C. C. A. 56, 45 L. R. A. 822; Merchants' Loan & Trust Co. v. Lamson, 90 Ill. App. 18; First Nat. Bank v. Gilbert & Clay, 123 La. 845, 49 So. 593, 25 L. R. A. (N. S.) 631, 131 Am. St. Rep. 382; State v. Jahraus, 117 La. 286, 41 So. 575, 116 Am. St. Rep. 208; also Conservative Homestead v. Pollock, No. 7430, Orleans Court of Appeals, and 30 Cyc. 1251."

The correct rule, then, is that, if the creditor in such a case as is presented here has knowledge, actual or constructive, that the funds given him by his debtor were derived from a particular source, the payment in question cannot be imputed in accordance with the article of the code, nor by agreement between debtor and creditor, if such imputation would be prejudicial to the interest of the third person from whom the funds were obtained.

Here the funds came from Famularo, and to impute the payment thereof to other accounts than that for which Famularo was liable was manifestly prejudicial to his interests.

Therefore, the only question left for determination is whether the creditor had knowledge of tho source of the funds, and if not, whether the circumstances were such that the creditor, to-wit, the Hortman Company, can, under the circumstances which surrounded the acceptance by it of the payment in question, be charged with constructive knowledge as to the source of the funds.

It is denied that there was actual knowledge.

When the payment was made by Naquin he was accompanied to the office of the Hortman Company by Famularo and his nephew, and when De Blanc, an employee of that company, questioned the advisibility of his receiving $700 in large bills because of the possibility of its being counterfeit, he was told that there was no danger on that score, as the money had just been withdrawn from the bank on a check of Famularo. It is true that De Blanc stated that he knew nothing about Naquin's various accounts, and that Mr. Sander, another employee, was familiar with those accounts, but this fact indicates that Sander had considerable familiarity with the various accounts due by Naquin, and that De Blanc himself knew that Naquin had various accounts and must have known of the large amount due on the Famularo job, and that Sander knew of it, is conceded by him in his statement that he knew of the contract between Famularo and Naquin. Surely, since De Blanc was told that the money had come from Famu-

laro, even if he himself did not know that there was on the books of the company an account covering sales for the Famularo job, the mere mention by him to Sander of Mr. Famularo's name would have put Sander on notice that Famularo had an interest in the transaction, and such notice would have prevented the imputation of the payment in such manner as to prejudice Famularo's rights.

The testimony shows that the Hortman Company maintained on its books a separate account for each job of each contractor, and, from this, it follows that Naquin had a separate account for the Famularo job. The fact that Famularo went with Naquin to make the payment should have indicated to De Blanc that there was something unusual or extraordinary about the payment. In fact, the very purpose of Famularo's visit was to see that the money was paid to the Hortman Company. Not being familiar with the fact that Naquin had various accounts on the books of the company, Famularo believed that all that the law required him to do was to see that the money which he gave to Naquin went to the creditor.

We think that, under the circumstances, to-wit: That there was an account on the books which Sander knew covered the Famularo job and that De Blanc was told that the money in question had come from Famularo, the Hortman-Salmen Company could not impute the payment otherwise than for the benefit of Famularo.

We find in the record the statement of Mrs. Famularo that, after the payment was made, she became worried about the fact that neither she nor her husband had any receipt from the Hortman Company for the $700 paid and that she, therefore, called

on Mr. Sander and asked him for a receipt and that he told her: "You should not be worried about that, Mr. Naquin is an honest man and you should not worry about the bill."

We do not find that Mr. Sander denied this conversation with Mrs. Famularo. If he did make the statement which we have quoted above, he made it after the payment had been imputed to other accounts than Famularo's and, he therefore knew, when he made the statement, that the Famularo money had not gone to their credit. This fact rather confirms us in our view that Sander knew, or ought to have known, that the funds in question came from Famularo and that the imputation to other accounts did not result from that high degree of good faith which is necessary to permit a creditor of one party to enrich himself at the expense of an innocent third party.

In Madison Lumber Co. vs. Bachemin et als., 9 La. App. 382, 120 So. 508, we dealt with a situation very similar to that presented here, but there we were unable to find any fact sufficient to charge the creditor with knowledge as to the source of the funds. Here we think there are sufficient facts.

It is, therefore, ordered, adjudged, and decreed, that the judgment appealed from be amended by reducing the amount thereof to $448.87, with legal interest from judicial demand, together with the sum of $1.50 cost of recording lien, and as thus amended, affirmed.