No. 4265

Second Circuit

## GEORGE E. BREECE LUMBER CO. v. MORRIS ET AL.

(May 20, 1932. Opinion and Decree.)

Hudson, Potts, Bernstein & Sholars, of Monroe, attorneys for plaintiff, appellant.

Theus, Grisham, Davis & Leigh, of Monroe, attorneys for defendants, appellees.

PALMER, J. Plaintiff seeks by this suit to recover of W. N. Morris and the Globe Indemnity Company in solido, the sum of $2,049.59, with interest at the legal rate

from judicial demand until paid, and 10 per cent upon the aggregate amount of principal and interest, as attorney's fees.

Plaintiff alleges that defendant Walter N. Morris contracted with Herman and Sig Masur for the construction of a certain building upon a lot in the city of Monroe, Louisiana; that defendant Globe Indemnity Company was the surety on the construction bond and that the contract and bond were timely recorded in the clerk's office of Ouachita parish; that all the materials listed on the account, on which this suit is based, were purchased from plaintiff by the defendant Morris, and were used in the construction of the said building; and that the total amount due for such materials is $2,057.37, less a credit of $7.75.

As a basis of its demand for attorney's fees, plaintiff avers that it made demand in writing on the Globe Indemnity Company, surety, for payment of its said account more than thirty days prior to the filing of this suit.

Defendants admit the correctness of the account sued on, but plead that Walter N. Morris paid plaintiff, for application on the Masur account, the sum of $500, which said sum they aver was received by Morris from Herman and Sig Masur, leaving a balance due plaintiff on said account of $1,549.59.

Defendants deny that proper notice was served on them whereby they can be held responsible for the attorney's fees claimed.

### THE FACTS

There is little, if any, dispute over the facts, although by the pleadings the contrary is indicated. The facts may be stated substantially as follows:

Defendant Walter N. Morris, on January 27, 1931, entered into a written contract with Herman and Sig Masur for the erection of a two-story, frame and brick veneer apartment building on property they owned, situated in the city of Monroe, Louisiana. This contract was bonded by the defendant Globe Indemnity Company, and both the contract and bond were properly recorded in the mortgage records of Ouachita parish two days after they were executed. The work promptly started and, between February 9, 1931, and April 22, 1931, Morris purchased from plaintiff the materials shown on the account sued on, amounting to the sum sued for, all of which was used in the erection of the said building.

At the same time Morris was engaged in constructing the Masur building, he was also engaged in erecting for Joe Sampagnaro another structure. That job was also bonded. Some of the materials used in that job also were purchased from plaintiff. In addition to these two jobs, Morris owed plaintiff for materials used in several other and older jobs, not bonded. In selling Morris materials, plaintiff kept a separate account for each job. The Masur job was for $17,847.51, while the Sampagnaro job was for $5,592.

On April 2, 1931, Morris received from the Masur job a payment of $4,000, made on an estimate. At that time he had no other funds, save perhaps about $25. On that same day, he paid plaintiff the sum of $500 out of the funds received from the Masur job. Defendants aver that Morris at the time of this payment directed plaintiff to credit the amount to the Masur job. Plaintiff credited the payment to the Sampagnaro job, which, as we have already stated, was also a bonded job. At the time of this payment, according to the testimony of Lee Hodges, bookkeeper for plaintiff company, there was nothing past due on either the Masur job or the Sampagnaro job. Morris left Monroe on June 27, 1931, and did not return until August 7, 1931. In

the meantime, his whereabouts were un-known.

The questions for decision in this case are whether or not plaintiff has made a proper imputation of this· payment of $500, and if not, should it be ordered to credit the payment to the Masur job? Also, is plaintiff entitled to recover for attorney's fees? And also should defendants be released from paying all costs accruing after they admitted in the answer owing the account sued on, subject to a credit of the said payment of $500?

## OPINION

"The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge." Civil Code, art. 2163.

"When the receipt bears no imputation, (that is, no instructions from the debtor on what debt to apply the payment) the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due; otherwise to the debt which has fallen due, though less burdensome than those which are not yet payable."

"If the debts be of a like nature, the imputation is made to the debt which has been longest due; if all things are equal, it is made proportionately." Civil Code, art. 2166.

Undoubtedly, the $500 with which this payment was made came from Herman and Sig Masur and, at least, from an equitable standpoint, should have been credited to that job. However, it seems there was a misunderstanding between plaintiff and Morris at the time this payment was made and, as a result of that misunderstanding, the sum was credited to the Sampagnaro job.

Morris, after making this payment, credited on his own books the Masur job with this payment. Notwithstanding the apparent misunderstanding between plaintiff and Morris as to the account on which this payment was to be applied, it is quite evident that in Morris' own mind, he intended for it to be credited to the Masur job.

Morris made this payment to the bookkeeper, Lee Hodges, in the office of the plaintiff company. George O. Breece, manager of the company, was in the office at the time, but was sitting nearby in an adjoining room. Breece testified that Morris first came into the room where he was and told him he received the money with which the payment was made from the Sampagnaro job, although he admitted that Morris did not request that the payment be credited to that job. On cross-examination, Breece somewhat modified his statement by saying that Morris only told him he was finishing up the Sampagnaro job. At any rate, Breece directed Morris to make the payment to the bookkeeper, so Morris delivered the check by which the payment was made to the bookkeeper, saying: "Lee, give me credit for $500.00." Hodges testified that no instructions were given him where to credit the payment; said he did not know at the time where the money came from.

There is a conflict between the testimony of Breece and Morris on what conversation took place between them in the office at the time this payment was made. Morris denied that he told Breece that he got this money from the Sampagnaro job. On the contrary, he says, in effect, that he feels reasonably sure he told him that the money in question came from the Masur job.

In considering the conflicting testimony, the court's first duty is to attempt to reconcile it, if possible. Therefore, ascribing to both parties honest intentions, the only way we can reconcile this conflict is on the theory that either Morris, in attempting to advise plaintiff the source from

which this money came and on which debt he desired it to apply, through error, said it came from the Sampagnaro job, or that Breece, having in mind both the Sampagnaro and Masur jobs, through error got it into his mind that Morris used the former instead of the latter name in this conversation. We can see no advantage to be gained by plaintiff by crediting the payment to the Sampagnaro job, for, as above stated, that job was also bonded. Neither can we see any advantage to be gained by Morris in having this payment credited to the Sampagnaro job, for the status of his personal liability to plaintiff would be the same regardless of which of these two jobs received the credit.

To say the least of it, the testimony of Breece and Morris on this controverted question, strongly indicates that there was a discussion between them at the time the payment was made, relative to the debt on which Morris desired the payment to apply.

If, therefore, plaintiff, through an honest misunderstanding, whether arising from its error or from the error of Morris, improperly credited this payment to the Sampagnaro job, especially if the interest of third parties has been prejudiced thereby, as is the case with the Globe Indemnity Company, the error should be corrected, if it can be done. The record discloses no reason why that could not be done without prejudice to the legally vested rights of others. Plaintiff is guaranteed the full amount of its account against both the Masur and the Sampagnaro jobs, so to withdraw this credit from the latter and place it to the credit of the former plaintiff would lose nothing thereby. Not only the equities in the case, but the law itself authorizes and demands that such an error as the facts show has been made in this case should be corrected. There can be no just complaint on the part of any interested person why such correction should not be made.

Even if it be true that the payment was made without any instructions from Morris as to what account of the several he owed the payment should be applied, the question arises: What were plaintiff's duties in determining which of the several debts owed it by Morris, and which were on an equality, did Morris have the greatest interest in discharging?

Clearly, under article 2166 of the Civil Code, when a debtor making a payment fails to direct to what debt it shall apply, the creditor is charged with the responsibility of crediting the payment to that debt which the debtor has the most interest in discharging, of those that are equally due. For the creditor to do this, he must take into consideration all the facts and circumstances bearing upon the debtor's situation. Hortman-Salmen Co., Inc., v. Naquin, 12 La. App. 491, 126 So. 453. Obviously, therefore, there is imposed upon the creditor in such instances the obligation of considering all the accounts due him by the debtor in his effort to determine which the debtor is most interested in discharging.

The record shows that Morris did quite an extensive business with plaintiff. There were some six or eight different accounts, and each was kept separately. This was necessary, of course, so that plaintiff could properly preserve his liens as a furnisher of material. At the time of this payment, only the Masur and the Sampagnaro jobs were bonded. Knowing that Morris was operating at least two jobs, it was the custom of the bookkeeper of plaintiff company, when Morris would make a payment, to ask him to what job he desired the payment credited. This is shown by the following questions and answers:

"Q. As a matter of fact, when you made this credit of $500.00 against the Sampagnaro job, you merely made that credit because you thought he might have got the money from the Sampagnaro job?

"A. I always made it a practice to ask Mr. Morris where he wanted the payment applied.

"Q. What did you say to him in this instance?

"A. He did not tell me where to apply it."

It is obvious, therefore, that at the time of this payment, the following situation clearly existed: Morris appears not to be progressing any too well financially. He owed plaintiff on six or eight different jobs. Plaintiff is familiar with his method of operating and always made it a rule, as the testimony of the bookkeeper shows, when Morris made a payment, if he did not give instructions, to inquire of him to what job he desired the payment applied. Under these circumstances, plaintiff should have known, and would have known, had he not deviated from the custom, that this money came from the Masur job. The bookkeeper offered no reason why, in this particular instance, the exception was made from the regular custom of asking Morris how he wanted the payment applied, and the apparent misunderstanding in crediting this payment to the Sampagnaro job was due to that departure from the said regular custom.

If plaintiff had considered all these facts and circumstances, as the custom would have warranted Morris in believing, he would have known that Morris had the greatest interest in discharging the Masur job. Under Act No. 76 of the Legislature of Louisiana for the year 1926, Morris could not have directed this payment to apply anywhere else except on the Masur job. If he should do so, he would be amenable to a criminal prosecution and subject to a maximum jail sentence of twelve months. Sections 1 and 2 of that act provide:

"1. Be it enacted by the Legislature of Louisiana, That any contractor or sub-contractor who shall default on any contract for the construction, erection or repair of any building, structure, or other improvement and who shall have applied any money received on account of said contract to any other purpose than the settlement of claims for material and labor due or to become due thereunder shall be guilty of a misdemeanor.

"2. That any person convicted of a violation of this Act shall be sentenced to not less than thirty (30) days nor more than six (6) months in the parish jail and shall be fined not less than One Hundred ($100.00) Dollars nor more than Five Hundred ($500.00) Dollars and in default of fine shall serve not less than thirty (30) days and not more than six (6) months additional."

The provisions of this statute only reach the contractor, yet it does have some bearing upon the question of what debt the contractor had the most interest in discharging with this money. In other words, Morris' interest in applying this payment towards the discharge of the Masur debt was far greater than his interest in discharging any other debt he owed plaintiff, so the creditor, being required, in the absence of instructions from the debtor, to impute the payment to the debt the debtor had the most interest in discharging, of those that are equally due, and, being familiar with the fact that Morris was working on both the Masur and Sampagnaro jobs, and having created and followed a custom of always asking Morris where he wanted the money applied, and being charged with knowledge of this law, failed in his duties in properly determining the account to which this credit should be applied. In other words, plaintiff did not make, under these facts and circumstances of which it had knowledge, the proper imputation of this payment and, not having

done so, it is proper for the court to direct that it now make the necessary correction.

The contention of plaintiff is that, since it did not know the source from which these funds came, even though the Globe Indemnity Company is prejudiced by the imputation of the payment made, it was not guilty of improper practice in crediting the payment to the Sampagnaro jobs. In support of this contention, plaintiff cites the following cases:

Hortman-Salmen Co. v. Continental Cas. Co., 170 La. 879, 129 So. 515; Grand Lodge Ben. Knights of America v. Murphy Cons. Co. et al., 152 La. 123, 92 So. 757; Madison Lbr. Co. v. Bachemin et al., 9 La. App. 382, 120 So. 508

If, as these cases hold, the plaintiff received this payment without any knowledge of its source, either expressed or implied, and if, when making the payment, Morris gave no instructions as to what debt on which to apply it, and if plaintiff applied the payment to the debt Morris had the most interest in discharging, of those that are equally due, then plaintiff was not guilty of improper practices when he did not apply the payment to the Masur job. But, as we have heretofore stated, it is evident that Morris and Breece, the manager of plaintiff company, discussed the account to which this payment should be applied at the time it was made and, through an error, either on the part of Breece in misunderstanding Morris, or on the part of Morris in erroneously stating the source of the money received, the credit was passed to the Sampagnaro job, notwithstanding the funds came from the Masur job.

Since no vested rights have been acquired in the meantime by any outsiders whose interests would be prejudiced by correcting the error, it is proper that such error be now corrected. Also, as we have heretofore stated, the facts and circumstances in possession of plaintiff at the time of this payment were such as to convey to it, or should have conveyed to it, the information that these funds were derived from the Masur job. Furthermore, as we have heretofore stated, the debt which Morris owed plaintiff, in which he had most interest in discharging, of those that are equally due, especially as related to these funds, was the Masur job. Having reached these conclusions on the facts in the case, the principles enunciated in the cases relied on by plaintiff are not applicable to the case at bar.

If Lee Hodges, the bookkeeper of plaintiff company, has correctly stated the facts, neither the Masur nor the Sampagnaro account was due at the time this payment was made, but plaintiff held other accounts against Morris that were older and which were past due, amounting to approximately $1,500. The following evidence of the bookkeeper bears out these conclusions:

"Q. You mentioned other accounts charged against Mr. Morris, were they older than the Sampagnaro charge?
"A. Yes, sir.
"Q. How much did they amount to?
"A. Approximately $1500.00.
"Q. About how old were those accounts?
"A. They dated back to the first of 1930.
\*    \*    \*    \*    \*    \*    \*    \*
"Q. Are they not supposed to pay for those jobs until the acceptance of the building?
"A. We do not consider it as due as long as we are protected on it.
\*    \*    \*    \*    \*    \*    \*    \*
"Q. You said the Masur job was not past due?
"A. Yes, sir.
"Q. The Sampagnaro job was not past due either, was it?
"A. There was nothing past due on either job."

Treating the case from this standpoint and considering all debts due to be of a

like nature, the imputation of this payment should have been made to the debt which was the longest due, or, if several were of the same rank in this respect, the payment should have been made to all such proportionally. In other words, if neither the Masur nor the Sampagnaro job was due and Morris gave no directions as to how to apply the payment, and there were no facts to show plaintiff that Morris had any greater interest in discharging one debt than another, then it was the duty of plaintiff to have applied the payment to the debt longest due. Not having done that, certainly the payment is yet subject to be applied to the proper account. The funds having been derived from the Masur job, naturally the proper place is for them to be credited to that job.

It is therefore apparent that from either of the several angles from which this case is treated in this decision, it is proper that the payment in question be credited to the Masur job.

Plaintiff's claims for attorney's fees cannot be allowed for the following reasons: The amount awarded in this judgment is less than the amount demanded. Furthermore, no allegation is made and no proof offered showing written demands were made on the principal for payment of the debt sued on. (Act No. 225 of 1918.)

Counsel for defendants contend that, having admitted in their answer that the account sued on, after taking credit for the $500 in question, is correct, all costs incurred thereafter should be borne by plaintiff. The evidence does not show that the defendants at any time made a real offer of the actual amount due to plaintiff, with interest and costs, which had accrued. To have stopped the costs, it was necessary for defendants to have made a tender of the actual amount plaintiff is entitled to recover under this judgment and, in making such tender, the form prescribed by law (Code of Practice, article 407), had to be complied with. There was no effort made to comply with the formalities required by this statute.

In our opinion, the judgment of the lower court is correct and it is accordingly affirmed, plaintiff, appellant, to pay all costs of appeal.