McBRIDE, Judge.
This appeal, perfected by defendant Fon-tenelle, involves a claim of $857.17 asserted by the furnisher of lumber and building *338 materials. The materials were sold and delivered to the contractor and .used in improving the property 1430 Jackson Avenue, the work having been performed under a verbal contract which, of course, was not placed of record in the mortgage office. Plaintiff sought a solidary personal judgment against the defendants, the contractor and the owner, for the amount of the claim, with recognition of his materialman’s lien and privilege on the property. The major task in the case is to strike a balance due by the contractor for the materials purchased. It is conceded that Lagasse, the contractor, paid on his account with plaintiff an aggregate amount of $2,025. The total purchases of máterial for the Fonte-nelle job aggregated $2,607.83, represented by twenty-one separate invoices, dated between February 26, 1951 and March 5, 1951. Whatever accounting difficulties there are arise from the fact that plaintiff carried in his books only one account in the name of the contractor, into which was posted as debits not only the purchases made by Lagasse for use in the Jackson Avenue job, but for other jobs as well.
The aggregate of Lagasse’s credits is made up of three payments, two for $700 each, and one for $625 plus a merchandise credit of $51.81, which admittedly belongs to the Jackson Avenue job.
Lagasse testified that he instructed the plaintiff’s bookkeeper to apply the three payments to the Jackson Avenue work. The bookkeeper makes no denial of such instructions and states that he has no recollection thereof. The first payment of $700 was in cash; the second was represented by two checks for $400 and $300 respectively, issued by the First National Insurance Company to Fontenelle, the owner, who endorsed them over to Lagasse, who in turn under his own endorsement gave them to plaintiff; the third payment was made up of $200.28 in cash and another of the checks of the First National Insurance Company in the amount of $424.72. The two $700 payments were credited against charges for the Fontenelle materials, but the bookkeeper divided the third payment by imputing $467.25 to the Fontenelle. job and $157.25 to. other outstanding debit items against Lagasse. The imputation of the $625 payment seems to have been made on the basis of the items of debit longest due.
Lagasse had the right to declare when he made the payments what debt he meant to discharge; LSA-C.C. art. 2163. But aside from the instructions which Lagasse says he gave the bookkeeper, the receipt for the third payment bears no imputation and it should have been imputed to the debt which Lagasse had at the time the most interest in discharging; LSA-C.C. art. 2166. The bookkeeper of the lumber company knew that the contractor carried several accounts, and the presence of the check of First National Insurance Company made payable to Fontenelle in the last payment should have strongly indicated to him that Lagasse ■ was making payments from money received by him from one of the owners of property on which he was working, and that the contractor had a greater interest to discharge one debt over the other. George E. Breece Lumber Co. v. Morris, 19 La.App. 875, 141 So. 787. We might say in passing that the debits against Lagasse for his other jobs were trivial as compared with the aggregate debits for the Fontenelle job.
Our analysis of the account reflects that Lagasse owes $531.02 on the Fontenelle job.
Appellant strenuously contends that if plaintiff has any lien against his property it arises from the sale to Lagasse of building materials used in the Fontenelle job. only on work done under a written contract between the contractor and the owner for the construction of two apartments on the property. The evidence is to the effect that Lagasse undertook to build two apartments for Fontenelle for $8,200, and that before the completion of the apartments, by a verbal arrangement, Lagasse contracted to construct a dining room on the existing property for $750. Fontenelle contends that the work on the apartments was performed under a contract, that was in writing, but we do not find this to be a fact. What appellant denominates a written contract is nothing more than Lagasse’s unsigned proposal to build the apartments. *339 Fontenelle’s counsel in argument refer to the agreement respecting the dining room as an oral contract, hut we notice both Lagasse and Fontenelle in their testimony term the work an “extra.” Both jobs were carried on simultaneously, and the record indicates that the building materials and supplies furnished by plaintiff were used indiscriminately in both. We do not think that the work to the dining room was performed under a separate contract, but rather it amounted to a supplementary contract, or as an extra as defendants refer to it while giving their testimony. The last delivery of materials, as before stated, was made on March S, 1951, at which time the work was progressing on both the apartments and the dining room. From the testimony of a subcontractor, who on February 27, 1951 submitted his estimate for certain tile work to be done in the apartments, his job was not completed until sometime in April 1951.
Plaintiff is not to be restricted in his proof to the materials furnished for the building of the apartments. It is true that the petition states that there was a written contract between the owner and the contractor, but that allegation does not militate against plaintiff’s right to recover for all of the materials furnished in the work on Fontenelle’s property. As we have said before there was never a written contract, and plaintiff could not know of the arrangements between the contractor and owner because there was nothing of record in the mortgage office showing the true state of affairs.
So, therefore, even if we accept the date of the delivery of the last materials, or the date of the completion of the work in the apartments, the obvious conclusion is that plaintiff’s lien was timely filed on May 4, 1951 in the mortgage records. Under LSA-R.S. 9:4812 the plaintiff is entitled to a personal judgment against Fontenelle for the balance of $531.02 due for the materials supplied to the Jackson Avenue job, with recognition of the lien therefor against the property.
Lagasse did not appeal from the judgment below, and therefore the judgment cannot be disturbed insofar as he is concerned.
For the reasons assigned, the judgment appealed from is amended to the extent that the personal judgment in favor of plaintiff against Ernest J. Fontenelle be reduced to the sum of $531.02, and as thus amended and in all other respects the judgment is affirmed.
Costs are to be paid by defendant-appellant.
Amended and affirmed.