AYRES, Judge.
Involved in this action by a materialman against a contractor and the contractor’s surety on performance bonds is a question relating to the imputation of a payment of $1,695.15 made by the contractor to the materialman on an account incurred for materials furnished on an unbonded project. The surety contends that it was prejudiced by the imputation of this payment, which payment resulted in a constructive legal fraud.
From a judgment predicated on a conclusion that the imputation of the payment was proper and legal, the defendant surety .appealed.
Presented on the appeal are issues both legal and factual in character. Determination of the latter is a prerequisite to a resolution of the former. Accordingly, the important and material facts established by the record must be first reviewed.
Plaintiff, under the name of H. R. Hayes Lumber Co., is, and has been for many years, engaged in the retail lumber and building supply business. During the course of its operations, in the year 1963, plaintiff furnished building materials and supplies to the defendant contractor, Russell & Hazel Builders, Inc., on several construction projects, some of which were bonded while others were unbonded. Included in the bonded projects were constructions for Dr. Ralph W. Einhorn, Ouachita National Bank, and Twin City Realty Corporation. Each of these projects was undertaken under a separate contract and secured by a separate performance bond. The defendant, The Home Indemnity Company, is the surety on each of these performance bonds. Among the unbonded projects was one known as the Ketchell job. Another over which a dispute has arisen as to whether it was bonded or un-bonded is referred to as the James Hobbs project. Separate accounts of the materials furnished for each project were kept by plaintiff.
On November 6, 1963, Bobby Richard Russell, president of defendant, Russell & Hazel Builders, Inc., brought to plaintiff a check of James Hobbs for $5,000.00, payable to plaintiff as well as to the contractor. Russell endorsed the check for his company and requested that it be first applied in full payment of the Hobbs account and the balance credited to the Ketchell account. Accordingly, $3,304.85 was applied in paying and closing out the Hobbs account. The balance of $1,695.15 was credited on the Ketchell account.
The contractor having defaulted in its payment of the Einhorn, Ouachita National Bank, and Twin City Realty Corporation accounts, plaintiff instituted this action against it and its surety, on each of its bonds, to recover the sums due respectively on those accounts. No defense was urged by the contractor. The contention of the *691 surety is that the aforesaid sum of $1,695.15, imputed to the Ketchell account, should have been credited to the accounts herein sued upon and on which it was responsible as surety.
With further reference to the Hobbs project, despite the contentions of the defendant surety and the reference made thereto by the trial court in its written reasons for judgment, we are unable to find, after a thorough and painstaking search of the record, any proof that the Hobbs project was bonded by the defendant surety or otherwise, or that the contractor owed other materialmen for supplies furnished to that job which the defendant was required to pay.
Under the facts disclosed by the record and to which we have referred, it may be correctly concluded that the contractor realized a profit on the Hobbs job of at least $1,695.15, which he directed to be applied to the Ketchell account, and, moreover, that the surety had no interest in either the Hobbs project or the funds paid the contractor therefrom, which funds, after payment of the Hobbs account, were solely those of the contractor.
The payment on the Ketchell job, as heretofore pointed out, was made pursuant to the contractor’s request and in strict accord with the provisions of the Civil Code (LSA-C.C. Art. 2163). In the cited article, it is declared that
“The debtor of several debts has a right to declare, when he makes a payment, what debt he means to discharge.”
The jurisprudence is uniformly in accord with the letter and spirit of this codal provision. For instance, it was stated in Grand Lodge, B. Knights of America v. Murphy Const. Co., 152 La. 123, 92 So. 757, 758-759 (1922):
“In general, therefore, the debtor may impute his payments as he pleases, and cannot be controlled therein by a surety (Robson & Allen v. McKoin, 18 La.Ann. 544), although that rule may be subject to some exception, as where the payment, to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with the debtor that the money be diverted and applied otherwise than as the debtor had expressly or impliedly agreed with his sureties. * * *
“Hence except where such imputation of payment would amount to a fraud on the part of both debtor and creditor, the debtor may always impute the payment as he pleases.”
In the list of authorities cited to support the aforesaid proposition were the following:
Burbank v. Buhler, 108 La. 39, 32 So. 201 (1902); State v. Jahraus, 117 La. 286, 41 So. 575, 116 Am.St.Rep. 208 (1906); First Nat. Bank of Birmingham, Ala., v. Gibert & Clay, 123 La. 845, 49 So. 593, 25 L.R.A.,N.S., 631, 131 Am.St.Rep. 382 (1909); Panama Sash & Door Co. v. United States Fid. & Guar. Co., 12 Orleans App. 15, 20 (1914).
See, also,
Hortman-Salmen Co. v. Continental Casualty Co., 170 La. 879, 129 So. 515 (1930).
Appropriate here is the observation made and the conclusion reached in Lake Charles Electric Co. v. Globe Indemnity Co., 128 So.2d 780, 782-783, La.App., 3d Cir. 1961, wherein it was stated:
“Counsel for Globe has also called to our attention the well established jurisprudence that where a general contractor owes a subcontractor or mate-rialman two debts, one of which is on a bonded job, neither the debtor nor the creditor, if he has knowledge of the source of the money, can impute payments of money received by the contractor from the bonded job to another debt owed by the contractor to the sub *692 contractor or materialman because this would amount to fraud as against the surety on the bonded indebtedness. See Calatex Oil & Gas Co. v. Smith, 175 La. 678, 144 So. 243; R. P. Farnsworth & Co. v. Electrical Supply Co., 5 Cir., 112 F.2d 150, 130 A.L.R. 192, and Breece Lumber Co. v. Morris, 19 La.App. 875, 141 So. 787. However, it is readily apparent that these cases are not applicable here because the credits received by Miller did not come from the Stedman job on which Globe was surety but rather came from an entirely unrelated source, the Carville job, which had no connection whatever with the Stedman job on which Globe zvas surety. The plaintiff and Miller have not defrauded Globe as to any funds received by Miller from the Stedman job.” (Emphasis supplied.)
We, therefore, conclude, as did the trial court, that the surety had no interest in the funds realized by the contractor from the Hobbs j ob; that such funds were those of the contractor; that he had a right to do with them as he saw fit; and that, accordingly, his imputation thereof to the Ketchell account was not only proper but worked no prejudice to or constituted a fraud upon the defendant, a surety on other unrelated projects.
However, should it have been established that the Hobbs job was bonded by the defendant surety, the surety could derive no comfort from that fact in view of the circumstances established to exist in the instant case, for, as heretofore pointed out, the Hobbs account was paid in full; both debtor and surety were accordingly released and discharged from their respective obligations, and their relationship as principal and surety was terminated. Whatever obligations they had assumed had been, by the payment made, extinguished; their aforesaid relationship, so far as concerned the contract relating to the Hobbs project, no longer existed when the contractor came into possession of the surplus funds and directed their credit upon the Ketchell account.
Under the aforesaid statement of facts, the conclusion, we again observe, is in--escapable that the surplus funds realized from the Hobbs project constituted funds of the contractor, with which the surety had no concern and with which the contractor might do as it saw fit. Their use in the payment of an account owed by the contractor, and selected by him for payment, was proper and resulted in no prejudice or fraud about which appellant had a right to complain.
The judgment appealed is accordingly affirmed at defendant-appellant’s cost.
Affirmed.