HARDY, Judge
This is an action by plaintiff against Lee Mercer and the named property owners, Arthur P. and Claudean Jackson, who were joined as defendants, seeking judgment for the balance of an account for building materials and supplies furnished by plaintiff to defendant, Mercer. Plaintiff also prayed for judgment recognizing, maintaining and rendering executory its special material-men’s lien and privilege upon the described property owned by the defendants, Arthur P. and Claudean Jackson. After trial on the merits there was judgment in favor of the defendants rejecting plaintiff’s demands, from which judgment plaintiff prosecutes this appeal.
This is one of six similar suits instituted by plaintiff against the defendant, Mercer, which differ only with respect to the names of the property owners who were joined *661 with Mercer as defendants, the description of the properties and the amounts involved. The six cases were consolidated for trial and for purposes of appeal but separate judgments were rendered in each case.
The material facts involved were established on trial without substantial dispute. The defendant, Lee Mercer, a resident of Delhi, Richland Parish, Louisiana, is a general building contractor who, during the year 1964, was engaged in construction and repair of residential properties in northeastern Louisiana under the trade name of “Capital Builders.” Plaintiff, the Maxwell Hardware & Lumber Co., Inc., also domiciled in Delhi, sold substantial quantities of building materials and supplies to Mercer, whose operations were financed in accordance with an arrangement he had effected with the Home Owners Mortgage Corporation of Baton Rouge. Under this agreement mortgage notes executed by the property owners in payment of their obligations to Mercer, in connection with construction or repair work, were transmitted by Mercer to the mortgage company in Baton Rouge which, after discounting the paper at varying rates apparently ranging from 50% up, then forwarded its check in payment for the discounted instruments to Mercer.
The manager of the Home Owners Mortgage Corporation of Baton Rouge, Mr. G. Kent Champagne, concerned about Mercer’s financial condition and discovering that Mercer was indebted to Maxwell for a considerable amount, arranged a conference with Mr. Frank E. Maxwell, Jr., President of plaintiff corporation, and the defendant, Mercer. As the result of this conference, which took place in Delhi sometime during the month of September, 1964, the three parties named reached an agreement as to the future conduct of their business relations. The substance of this agreement, insofar as it affects this litigation, was that the mortgage company after discounting mortgage notes acquired by Mercer would make payment therefor by checks payable jointly to Mercer and Maxwell. Upon receipt of checks from the mortgage company they were endorsed by Mercer and delivered by him to Maxwell. A portion of the proceeds of the checks, by agreement between Maxwell and Mercer, was applied to Mercer’s unpaid accounts and the balance delivered to Mercer. Of considerable importance is that a portion of the tripartite agreement provided that the checks issued by the mortgage company were not to be identified with any particular account, no matter from what source the payment was made. Nevertheless, Mr. Maxwell testified that, despite this lack of identification on the checks, he was informed by Mercer in each instance as to the source of the payments, that is, the identification of the particular job from which the payment had derived. Introduced in evidence in these cases were six checks issued by the Home Owners Mortgage Corporation payable to the order of Lee V. Mercer and Maxwell Hdwe. & Lbr. Co., which were identified with the mortgage notes delivered to Mercer by the six sets of property owners involved in these suits in payment of the cost of construction or repairs performed by Mercer on their respective properties. Each of these checks represented an amount much larger than the account due by Mercer to Maxwell for materials and supplies furnished in connection with each job.
The above procedure resulted in the payment of considerable amounts to plaintiff, Maxwell, which payments were imputed by Maxwell to the oldest of Mercer’s accounts without any consideration of the fact that the payments had been received by Mercer from the individual property owners involved in these suits.
It is hardly necessary to make the observation that the defendent property owners were not parties to nor .did they have any knowledge of the agreement which inured to the benefit of Maxwell and Mercer.
Despite the operation of the agreement, Mercer continued to default in payment of his accounts to Maxwell and on April 1, 1965, material liens were filed against the six properties involved in these suits, which *662 suits were filed on January 12, 1966. On February 25, 1966, preliminary defaults were entered by plaintiff in each of the six suits. On March 21, 1966, the defendant property owners filed answers to the plaintiff’s suits in the nature of a general denial and an affirmative defense of payment based upon the facts above set forth. On May 20, 1966, the defendant property owners in each case filed a plea of prescription, accompanied by a motion for summary judgment, based upon the contention that plaintiff’s lien filed on April 1, 1965, had not been re-inscribed in accordance with the provisions of LRS. 9:4812.
The defendant, Lee Mercer, did not appear nor answer any of the suits. Despite his failure to answer, and although the record establishes Mercer’s indebtedness to the plaintiff in each of the six cases, the judgments rendered and signed contain no pronouncement with respect to plaintiff’s claim against Mercer.
The judgments in these cases were not accompanied by written reasons in support thereof and there appears to be a difference of opinion between counsel for the parties litigant as to the reasons upon which the district judge based his conclusions. Counsel for plaintiff-appellant interprets the judgment as sustaining the defense of payment asserted by the defendant property owners, while counsel for defendants asserts that the district judge in his oral reasons for judgment sustained the pleas of prescription and pronounced judgment responsive to the motions for summary judgment.
We have decided to give our first consideration to the issue which involves the defense of payment, in view of the interpretation made by counsel representing the appellant.
Under the circumstances of this case we find the conclusions of our brethren of the Third Circuit in Baudoin v. Gallier (1963), La.App., 153 So.2d 169, to be particularly appropriate. After a review of applicable jurisprudence it was the conclusion of the court that the knowledge of the plaintiff subcontractor that funds received from the contractor were derived from payments made by the defendant property owner to the contractor, prohibited plaintiff’s recovery against the defendant property owner.
While it is true, as contended on behalf of appellant, that R.C.C. Article 2163 authorizes a debtor to impute his payment to a specific debt, it is clear from our somewhat limited jurisprudence on the subject that the provisions of our Civil Code regulating the imputation of payments have no application to the peculiar conditions resulting from the effect of statutory regulations with respect to materialmen’s liens. We are in complete agreement with the reasons advanced in the case of Roca v. Caruso, 7 Orleans App. 451, and we adopt, with wholehearted approval, the conclusion expressed in that case that law does not prevent and equity requires that payments made with money earned on one contract should be imputed first to the debt in connection with that contract.
Of primary importance in the resolution of the issue presented is the convincingly established fact in the instant case that the plaintiff knew that the monies he received were derived from payments made by the defendant property owners in these suits in discharge of their obligations to plaintiff’s debtor, Mercer. It matters not that the “arrangement” between Maxwell, Mercer and the mortage company provided that the checks made to Maxwell and Mercer should not show on their face any identification with any particular job. Indeed, this would appear to be indicative of an effort on the part of plaintiff to avoid the responsibility of knowledge which would prevent imputation of the monies received in order to best serve its interest at the expense of the defendant property owners.
The exception to the general rule as to the right to make imputation of payments was clearly set forth by the Supreme Court in Grand Lodge, Benevolent Knights of *663 America v. Murphy Construction Co., 152 La. 123, 92 So. 757, as follows:
“ * * * where the payment, to the knowledge of the creditor, is derived from a source such that it would be a fraud for the creditor to consent with the debtor that the money be diverted and applied otherwise than as the debtor had expressedly or impliedly agreed with his sureties.” (authorities cited)
In the Baudoin case, supra, the Court expressed its firm opinion:
“ * * * that it is immaterial whether a legal fraud is being committed on a surety or on a homeowner, the results are the same, namely, injury to a third party.”
Under the facts of the instant case we are plagued by neither doubt nor uncertainty as to the correctness of the judgments in favor of the defendants property owners.
Because of our conclusions based upon the merits of the case before us, we find it unnecessary to consider the issue presented by the plea of prescription and the motion for summary judgment in connection therewith.
There is no question as to the right of plaintiff to judgment against the defendant, Mercer.
Accordingly, the judgment appealed from is amended to such extent, that;
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Maxwell Hardware & Lumber Company, Inc., against the defendant, Lee Mercer, d/b/a Capital Builders, in the full sum of Two Thousand One Hundred Twenty-two and 17/100 ($2,122.17) Dollars, with interest thereon at the legal rate from date of judicial demand until paid, together with all costs.
In all other respects the judgment appealed from is affirmed and costs of this appeal are taxed against plaintiff-appellant.